PEOPLE v PAYNE

Docket No. 280260. Submitted April 7, 2009, at Grand Rapids. Decided
July 28, 2009, at 9:05 a.m.

A Kent Circuit Court jury convicted Scott G. Payne in four cases that
were consolidated for trial. In Kent Circuit Court Case No. 06-011607-FC, the defendant was convicted of first-degree criminal
sexual conduct (CSC I) and received, as a third-offense habitual
offender, a sentence of life imprisonment. In Case No. 06-011875-FC,
the defendant was convicted of two counts of CSC I and was
sentenced as a third-offense habitual offender to life imprisonment
and 40 to 60 years of imprisonment. In Case No. 06-011944-FC, the
defendant was convicted of third-degree criminal sexual conduct
(CSC III) and received, as a third-offense habitual offender, a sen-
tence of 10 to 30 years of imprisonment. Finally, in Case No. 06-012819-FH, the defendant was convicted of CSC III and was sen-
tenced as a fourth-offense habitual offender to 20 to 40 years of
imprisonment. The defendant appealed.

The Court of Appeals *held*:

1. The trial court abused its discretion by requiring the defen-
dant to wear leg shackles in the courtroom. However, because the
jury did not see the shackles, inasmuch as the defense table had a
skirt and the defendant entered and left the courtroom while the
jury was not present, the defendant cannot show prejudice that
entitles him to relief.

2. The trial court did not abuse its discretion by permitting the
defendant to appear before the jury with eight months of beard
growth. The beard, by itself, did not constitute an impermissively
distinctive reminder of the defendant's incarcerated status or
prejudicially mark him as a prisoner. Moreover, once the defendant
objected on the second day of trial, the trial court took immediate
measures to provide him with access to grooming supplies before
his next appearance in court.

3. The defendant was not denied the effective assistance of
counsel when trial counsel failed to meet with him during the time
between the preliminary examination and the first day of trial, when
counsel failed to secure the defendant's attendance at a pretrial
hearing, when counsel failed to retain an expert witness to review the

work of the prosecution's DNA expert, when counsel waived his opening statement, when counsel cross-examined two of the victims, or when counsel failed to object the defendant's appearance in court with a beard and in shackles. Regarding the lack of a meeting between the defendant and counsel, the record indicates that counsel was prepared for trial, displayed an adequate knowledge of the evidence, and was fully prepared to cross-examine the prosecution's witnesses. There was no pretrial hearing for the defendant to attend. The decision to not retain a DNA expert and to waive an opening statement were presumptively matters of effective trial strategy on counsel's part, and the defendant did not meet his heavy burden of overcoming that presumption. The defendant failed to show that the retention of a DNA expert, a different cross-examination of the two witnesses, or an opening statement would have altered the outcome of the trial. Counsel could not be ineffective with respect to his failure to object to the defendant's bearded and shackled appearance in court. Even if the failure to object were error, the defendant cannot demonstrate that, but for that error, the outcome of the trial would have been different.

4. The trial court did not err by accepting waivers of arraignment by mail and did not prevent the defendant from engaging in plea negotiations. The defendant waived formal arraignment, neither party to a criminal trial has a right to present a plea, and the defendant rejected a plea deal.

5. The trial court did not abuse its discretion by sentencing the defendant to 40 to 60 years of imprisonment in Case No. 06-011875-FC. Because the defendant was sentenced as an habitual offender in that case, the judicial sentencing guidelines that would have normally applied at the time were not applicable. Instead, the sentence is reviewed for abuse of discretion. A trial court does not abuse its discretion in giving a sentence within the limits established by the Legislature when, as in this case, the habitual offender's underlying felony, in the context of his or her previous felonies, evidences that the defendant is unable to conform his or her conduct to the laws of society.

6. The trial court did not improperly consider the defendant's lack of remorse during sentencing. The trial court did not improperly attempt to make the defendant admit his guilt or improperly consider the defendant's refusal to admit guilt at sentencing. Nothing in the record suggests that the trial court would have been more lenient had the defendant admitted guilt.

7. Several laboratory reports containing the results of DNA testing constituted inadmissible hearsay and were not admissible pursuant to MRE 803(6) as business records. A laboratory report

prepared by a nontestifying analyst is hearsay and is not admissible unless it fits within the exceptions allowed by MRE 803 and 804. Because the laboratory results at issue were adversarial and were intended to establish an element of the CSC charges against the defendant through the hearsay DNA evidence they contained, the reports were not admissible under MRE 803(6) or 803(8). The erroneous admission of the reports was not harmless because the reports were the only evidence that established an element of the CSC charges against the defendant in Case Nos. 06-011607-FC and 06-011944-FC.

8. The admission of the hearsay laboratory reports in Case Nos. 06-011607-FC and 06-011944-FC violated the defendant's Sixth Amendment right to confront the witnesses against him. A laboratory report prepared by a nontestifying analyst is testimonial hearsay and, absent a showing that the analyst is unavailable to testify at trial and that the defendant had a prior opportunity to cross-examine the analyst, is inadmissible. The plain constitutional error represented by the erroneous admission of the reports in Case Nos. 06-011607-FC and 06-011944-FC requires a reversal of the defendant's convictions in those cases because the error affected the fairness and integrity of the trial in view of the fact that the DNA laboratory reports were the most damning evidence and were decisive of the outcome of the trial.

Convictions and sentences in Case Nos. 06-011875-FC and 06-012819-FH affirmed; convictions and sentences in Case Nos. 06-011607-FC and 06-011944-FC reversed.

1. CRIMINAL LAW — TRIAL — RESTRAINTS ON DEFENDANTS.

A defendant may be shackled during trial only if the record evidence indicates that it is necessary to prevent escape or injury to persons in the courtroom, or to maintain order; a trial court's decision to shackle a defendant is reviewed on appeal for abuse of discretion; even if the trial court abuses its discretion, the defendant is not entitled to relief unless the defendant shows that he or she suffered prejudice.

2. CRIMINAL LAW — TRIAL — DEFENDANT'S PHYSICAL APPEARANCE.

A defendant generally has the right to appear before the court with the appearance, dignity, and self-respect of a free and innocent person.

3. CRIMINAL LAW — INEFFECTIVE ASSISTANCE OF COUNSEL.

A defendant, in order to establish ineffective assistance of counsel, must show that counsel's performance was deficient and that the

deficient performance prejudiced the defense; performance is measured against an objective standard of reasonableness; to demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.

4. CRIMINAL LAW — INEFFECTIVE ASSISTANCE OF COUNSEL — TRIAL — FAILURE TO CALL WITNESSES — WAIVERS OF OPENING STATEMENT.

Counsel's decisions on whether to retain witnesses, including expert witnesses, and on whether to waive an opening statement are presumed to be matters of trial strategy, and a defendant must meet a heavy burden to overcome the presumption when claiming ineffective assistance of counsel.

5. SENTENCES — REFUSAL TO ADMIT GUILT.

A sentencing court cannot base a sentence, even in part, on a defendant's refusal to admit guilt; when determining if a sentencing court improperly considered a defendant's refusal to admit guilt, the reviewing court should examine the following factors: the defendant's maintenance of innocence after conviction, the sentencing court's attempt to get the defendant to admit guilt, and the appearance that, had the defendant affirmatively admitted guilt, the sentence would not have been so severe.

6. EVIDENCE — HEARSAY EXCEPTIONS — PUBLIC RECORDS — BUSINESS RECORDS — POLICE LABORATORY REPORTS — CRIMINAL SEXUAL CONDUCT.

A police laboratory report containing DNA test results identifying a defendant as the perpetrator of a criminal sexual conduct offense is hearsay and is not admissible under the business records exception or the public records exception to the hearsay rule (MRE 803[6], [8]).

7. EVIDENCE — TESTIMONIAL HEARSAY — ADMISSIBILITY.

A police laboratory report prepared by a nontestifying analyst is testimonial hearsay and is not admissible absent a showing that the analyst is unavailable to testify at trial and that the defendant had a prior opportunity to cross-examine the analyst.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *William A. Forsyth*, Prosecuting Attorney, *Timothy K. McMorrow*, Chief Appellate Attorney, and *Gary A. Moore*, Assistant Prosecuting Attorney, for the people.

*Peter Ellenson* and Scott G. Payne, *in propria persona,* for the defendant.

Before: SAAD, C.J., and JANSEN and HOEKSTRA, JJ.

JANSEN, J. Defendant appeals by right his jury-trial convictions in four separate cases, all of which were joined for trial. In Kent Circuit Court Case No. 06-011607-FC, defendant was convicted of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(f).[1] In Kent Circuit Court Case No. 06-011875-FC, defendant was convicted of two counts of CSC I, MCL 750.520b(1)(e) (Count 1), and MCL 750.520b(1)(f) (Count 2).[2] In Kent Circuit Court Case No. 06-011944-FC, defendant was convicted of third-degree criminal sexual conduct (CSC III), MCL 750.520d(1)(a).[3] In Kent Circuit Court Case No. 06-012819-FH, defendant was convicted of CSC III, MCL 750.520d(1)(b).[4] Defendant was acquitted in a fifth, separate case. We affirm in part and reverse in part.

I

Defendant first argues that he was denied his right to a fair trial when he was forced to appear in court with

[1] In Kent Circuit Court Case No. 06-011607-FC, defendant was sentenced as a third-offense habitual offender, MCL 769.11, to life imprisonment.

[2] In Kent Circuit Court Case No. 06-011875-FC, defendant was sentenced as a third-offense habitual offender, MCL 769.11, to life imprisonment for Count 1 and to 40 to 60 years in prison for Count 2.

[3] In Kent Circuit Court Case No. 06-011944-FC, defendant was sentenced as a third-offense habitual offender, MCL 769.11, to 10 to 30 years in prison.

[4] In Kent Circuit Court Case No. 06-012819-FH, defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to 20 to 40 years in prison.

an unshaven face, wearing leg shackles, and surrounded by armed guards in the courtroom during the first two days of trial. We review a trial court's decision to shackle a defendant for an abuse of discretion under the totality of the circumstances. *People v Dixon*, 217 Mich App 400, 404-405; 552 NW2d 663 (1996). With respect to a defendant's physical appearance during trial, we also review the trial court's decision for an abuse of discretion. See *People v Harris*, 201 Mich App 147, 151; 505 NW2d 889 (1993). We defer to the trial court's superior opportunity to observe the defendant and to determine whether the defendant's appearance prejudicially marks him or her as a prisoner. *Id*. at 152.

A

Included within the right to a fair trial, absent extraordinary circumstances, is the right to be free of shackles or handcuffs in the courtroom. *Dixon*, 217 Mich App at 404. While this right is not absolute, a defendant "may be shackled only on a finding supported by record evidence that this is necessary to prevent escape, injury to persons in the courtroom or to maintain order." *People v Dunn*, 446 Mich 409, 425; 521 NW2d 255 (1994). But even if a trial court abuses its discretion and requires a defendant to wear restraints, the defendant must show that he suffered prejudice as a result of the restraints to be entitled to relief. *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008). "[A] defendant is not prejudiced if the jury was unable to see the shackles on the defendant." *Id*. We conclude that the trial court abused its discretion by requiring defendant to wear leg shackles in the courtroom because the court's decision in this regard was not supported by the record evidence. There was quite simply no evidence to suggest that defendant was a flight risk,

that he was likely to attempt to escape, or that shackles were needed to maintain order in the courtroom. However, defendant has failed to show that he suffered prejudice. Indeed, the record shows that the defense table in the courtroom was skirted with paper, which prevented the jury from seeing the shackles. Moreover, defendant entered and left the courtroom while the jury was not present. We perceive no actual prejudice to defendant on the facts of this case.

B

We conclude that the trial court did not abuse its discretion with respect to defendant's personal appearance. It is true that a criminal defendant generally has the right to appear before the court " 'with the appearance, dignity, and self-respect of a free and innocent man . . . .' " *People v Shaw*, 381 Mich 467, 474; 164 NW2d 7 (1969) (citation omitted). Defendant contends that he was required to appear before the jury with eight months of beard growth because jail personnel had not allowed him to shave. We cannot conclude that defendant's beard alone constituted an impermissibly distinctive reminder of defendant's incarcerated status or prejudicially marked him as a prisoner. See *Harris*, 201 Mich App at 152. Moreover, defendant did not object to his appearance in court until the second day of trial, at which time the trial court took immediate measures to provide him with access to grooming supplies before his next appearance in court. Under these circumstances, we find no abuse of discretion. Defendant was not denied his right to a fair trial.

C

Defendant also refers in his statement of the questions presented to his appearance in court "surrounded

by armed guards." Defendant has abandoned this issue by failing to provide any analysis in the text of his brief on appeal. MCR 7.212(C)(7); *People v Anderson*, 209 Mich App 527, 538; 531 NW2d 780 (1995). Even more importantly, we note that the record is devoid of any evidence that defendant was "surrounded" by armed guards at any time during trial. We perceive no error in this regard.

II

Defendant next argues that he was denied the constitutional right to effective assistance of counsel. Although the trial court rejected his motion, defendant preserved his claim of ineffective assistance of counsel by moving for a new trial or *Ginther*[5] hearing in the court below. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). Nonetheless, because no *Ginther* hearing was held, our review is limited to mistakes apparent on the record. *Id.*; see also *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

In *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court explained the test for determining whether a criminal defendant has been denied the effective assistance of counsel. A defendant must first show that defense counsel's performance was deficient and, second, that counsel's " 'deficient performance prejudiced the defense.' " *Id.* at 600 (citation omitted); see also *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Whether defense counsel's performance was deficient is measured against an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). "To

---

[5] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Carbin*, 463 Mich at 600.

A

Defendant first contends that defense counsel's failure to meet with him during the time between the preliminary examination and the first day of trial amounted to ineffective assistance of counsel. However, the record reveals that defense counsel was prepared for trial, displayed an adequate knowledge of the evidence, and was fully prepared to cross-examine the prosecution's witnesses. We cannot conclude that counsel's performance in this regard fell below an objective standard of reasonableness. *Toma*, 462 Mich at 302. Similarly, defendant asserts that defense counsel's failure to secure his attendance at a "single pretrial hearing" amounted to ineffective assistance of counsel. But the record indicates that defendant waived formal arraignment and that there were no pretrial hearings that took place between the preliminary examination and the first day of trial. Thus, we cannot conclude that defense counsel was ineffective in this regard.

B

Defendant next contends that several strategic decisions made by his trial attorney constituted ineffective assistance of counsel. Specifically, defendant asserts that defense counsel should have retained independent expert witnesses to review the work of the prosecution's DNA experts, that defense counsel improperly cross-examined two of the victims, and that defense counsel should not have waived his

opening statement. An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy. *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). A defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy. *Id.* In general, the failure to call a witness can constitute ineffective assistance of counsel only when it "deprives the defendant of a substantial defense." *People v Hoyt*, 185 Mich App 531, 537-538; 462 NW2d 793 (1990). Similarly, the waiver of an opening statement involves "a subjective judgment on the part of trial counsel which can rarely, if ever, be the basis for a successful claim of ineffective assistance of counsel." *People v Pawelczak*, 125 Mich App 231, 242; 336 NW2d 453 (1983). "We will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).

In addition, we note that irrespective of whether defense counsel's decision concerning whether to retain independent experts was proper trial strategy, defendant has merely speculated that an independent expert could have provided favorable testimony. In other words, defendant has failed to show that the retention of an independent expert would have altered the outcome of the lower court proceedings. *Carbin*, 463 Mich at 600. Similarly, with respect to defense counsel's cross-examination of the two victims, as well as counsel's decision to forgo an opening statement, defendant has failed to establish that his attorney performed deficiently under an objective standard of reasonableness or that counsel's specific actions affected the outcome of the lower court proceedings. *Id.*

C

Defendant contends that defense counsel was ineffective for failing to object to defendant's appearance in court with a "wild beard" and leg shackles. As we have already stated, defendant cannot show that the shackles prejudiced him because the jury never saw them. *Horn*, 279 Mich App at 36. Nor has defendant shown that he was in any way prejudiced by his appearance at trial, including the presence of facial hair. Trial counsel is not ineffective for failing to advocate a meritless position. *People v Goodin*, 257 Mich App 425, 433; 668 NW2d 392 (2003). And even assuming that counsel did err by failing to object in this regard, defendant cannot demonstrate that, but for counsel's alleged errors, the outcome of trial would have been different. *People v Mitchell*, 454 Mich 145, 167; 560 NW2d 600 (1997).

III

Defendant next argues that the trial court erred by accepting waivers of arraignment by mail, thus denying him the right to engage in plea negotiations. Defendant waived formal arraignment on the informations and pleaded "not guilty" to the charges when he and his attorney signed waiver forms and provided them to the trial court. The trial court properly accepted the waivers and did not deny defendant any of his pretrial rights in this respect. See MCR 6.113(C). Further, we note that defendant's contention that he had the "right" to engage in plea negotiations with the prosecution lacks merit. As our Supreme Court has noted, "neither this Court nor the United States Supreme Court has recognized that the parties have a right to present a plea." *People v Grove*, 455 Mich 439, 469 n 36; 566 NW2d 547 (1997); see also *Santobello v New York*, 404 US 257, 261-262; 92 S Ct 495; 30 L Ed 2d 427 (1971). In addition, defendant rejected a

plea bargain on the first day of trial and indicated during his testimony that he did so because he "was innocent." We find no error.

IV

Next, defendant argues that the trial court improperly exceeded the sentencing guidelines by sentencing him to 40 to 60 years in prison for Count 2 in Kent Circuit Court Case No. 06-011875-FC. The offense for which defendant was convicted, and which gave rise to this sentencing issue, occurred in August 1989. Therefore, the former judicial sentencing guidelines promulgated by the Michigan Supreme Court would normally apply in this case. MCL 769.34(1); *People v Reynolds*, 240 Mich App 250, 253; 611 NW2d 316 (2000). However, defendant was sentenced for this conviction as an habitual offender, and the judicial sentencing guidelines are inapplicable to the sentencing of habitual offenders. *People v Coy*, 258 Mich App 1, 23; 669 NW2d 831 (2003); *People v Hansford (After Remand)*, 454 Mich 320, 323; 562 NW2d 460 (1997). "Nevertheless, the principle of proportionality applies." *Coy*, 258 Mich App at 23.

In cases such as this, we review the trial court's sentencing of an habitual offender for an abuse of discretion. *Hansford*, 454 Mich at 324. In the context of sentencing before the legislative guidelines, "a trial court does not abuse its discretion in giving a sentence within the statutory limits established by the Legislature when an habitual offender's underlying felony, in the context of his previous felonies, evidences that the defendant has an inability to conform his conduct to the laws of society." *Id*. at 326.

Defendant's criminal history and underlying felonies showed that he could not conform his conduct to the laws of society, and the sentence imposed by the trial

court was within the statutory limits established by the Legislature. *Id.* Defendant's criminal history at the time he committed the offense at issue showed that he had committed prior violent sexual assaults. With respect to the felony giving rise to the challenged sentence, itself, defendant attacked the victim while she was alone in a field at night. He brutally beat her by punching and hitting her in the face, and he choked her before throwing her to the ground and tying her hands and feet so she could not escape. Defendant threatened to kill the victim and informed her that she would soon be dead. In addition, defendant held a knife to the victim's throat, and forced her to perform fellatio after penetrating her on two separate occasions with his penis. Defendant then left the victim alone, naked, and tied up in a field. The Legislature has prescribed a sentence of "imprisonment for life or for any term of years" for CSC I, MCL 750.520b(2)(a), and has likewise specified that upon sentencing a defendant as a third-offense habitual offender, "[i]f the subsequent felony is punishable upon a first conviction by imprisonment for life, the court . . . may sentence the person to imprisonment for life or for a lesser term," MCL 769.11(1)(b). In light of the nature of the sentencing offense, and given defendant's criminal history at the time, we conclude that the sentence of 40 to 60 years in prison did not violate the principle of proportionality. See *Coy*, 258 Mich App at 23. We find no abuse of discretion. *Hansford*, 454 Mich at 326.

V

Defendant also argues that the trial court improperly considered his lack of remorse during sentencing. Specifically, defendant argues that the trial court improperly based its sentencing decision on his assertion of innocence. "A sentencing court cannot base a sentence

even in part on a defendant's refusal to admit guilt." *People v Dobek*, 274 Mich App 58, 104; 732 NW2d 546 (2007). We look to three factors to determine if a sentencing court improperly considered a defendant's refusal to admit guilt: "(1) the defendant's maintenance of innocence after conviction; (2) the judge's attempt to get the defendant to admit guilt; and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe." *People v Wesley*, 428 Mich 708, 713; 411 NW2d 159 (1987). Applying these factors, it does not appear to us that the trial court improperly attempted to make defendant admit his guilt or improperly considered defendant's refusal to admit guilt at sentencing. While it is true that defendant maintained his innocence at the sentencing hearing, nothing in the record suggests that the trial court would have been more lenient had defendant admitted guilt. Resentencing is not warranted on these facts. *Dobek*, 274 Mich App at 106.

VI

Defendant has raised certain additional claims of error in his supplemental brief, filed *in propria persona*. We address these issues seriatim.

A

Defendant first contends in his supplemental brief that several laboratory reports containing the results of DNA testing should not have been admitted into evidence under Federal Rules of Evidence 1002 and 1003. As an initial matter, we note that this was a state prosecution in state court, and that the Federal Rules of Evidence were accordingly inapplicable. It is true that MRE 1002 and 1003—like FRE 1002 and 1003—govern the requirement of an original document and the ad-

missibility of duplicate documents into evidence. However, there is quite simply no evidence that the laboratory reports admitted in this case were anything other than accurate and complete copies of the originals. See MRE 1003. Defendant has not sufficiently developed this argument, and we therefore decline to consider it further. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

B

Defendant also contends that the trial court erred by admitting the laboratory reports over his objection in Kent Circuit Court Case Nos. 06-011607-FC and 06-011944-FC[6] because the reports constituted inadmissible hearsay. Defendant asserts that the reports were not admissible pursuant to MRE 803(6) as business records. He also argues that because foundation witness Allisa Gindlesperger did not prepare the reports herself, she was unqualified to provide foundation testimony as a "custodian or other qualified witness." We conclude that the reports constituted inadmissible hearsay, and were admitted in error.

At trial there was no dispute that the contents of the laboratory reports amounted to hearsay evidence. MRE 801 and 802. But the trial court admitted the records under MRE 803(6), which excepts from the hearsay rule

---

[6] Unlike the laboratory reports admitted in Kent Circuit Court Case Nos. 06-011875-FC and 06-012819-FH, which were prepared by analysts who *did* testify at trial, a nontestifying analyst prepared the laboratory reports admitted in Kent Circuit Court Case Nos. 06-011607-FC and 06-011944-FC.

[a] memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Our Supreme Court has made clear that a laboratory report prepared by a nontestifying analyst "is, without question, hearsay." *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). "As such, pursuant to MRE 802, it is not admissible unless it fits within at least one category of the allowable exceptions outlined in MRE 803 and 804." *Id.* Because the laboratory reports at issue were adversarial and were intended to establish an element of the CSC charges against defendant through the hearsay DNA evidence they contained, the reports were not admissible as business records under MRE 803(6) or as public records under 803(8). *McDaniel*, 469 Mich at 413-414. Furthermore, the erroneous admission of the hearsay laboratory reports was not harmless because the reports were the only evidence that established an essential element of the CSC charges against defendant in Kent Circuit Court Case Nos. 06-011607-FC and 06-011944-FC. *Id.* at 413.

C

Defendant lastly contends that the admission of the hearsay laboratory reports in Kent Circuit Court Case Nos. 06-011607-FC and 06-011944-FC violated his Sixth Amendment right to confront the witnesses against him. We agree.

The Confrontation Clause of the Sixth Amendment bars the admission of testimonial hearsay unless the declarant is unavailable and the defendant has had a prior opportunity for cross-examination. *Crawford v Washington*, 541 US 36, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004); *People v Walker*, 273 Mich App 56, 60-61; 728 NW2d 902 (2006).

In *People v Lonsby*, 268 Mich App 375, 392-393; 707 NW2d 610 (2005), now Chief Judge SAAD concluded that a laboratory report prepared by a nontestifying analyst was testimonial hearsay within the meaning of *Crawford*. In *Lonsby*, the in-court testimony of one analyst was offered for the purpose of introducing the laboratory report, findings, and conclusions of a different, nontestifying analyst. Judge SAAD concluded that the inculpatory laboratory report, prepared by the nontestifying analyst, constituted testimonial hearsay within the meaning of *Crawford*. *Id*. Specifically, Judge SAAD wrote that because there was "no showing that [the nontestifying analyst] was unavailable to testify and that defendant had a prior opportunity to cross-examine her, the admission of the evidence violated defendant's Confrontation Clause rights, as defined by the United States Supreme Court in *Crawford*." *Id*. at 393.

We acknowledge that because the other members of the *Lonsby* panel concurred in the result only, *Lonsby* is not binding precedent. See *Fogarty v Dep't of Transportation*, 200 Mich App 572, 574-575; 504 NW2d 710 (1993). However, Judge SAAD's well-reasoned opinion in *Lonsby* is fully consistent with the United States Supreme Court's recent decision in *Melendez-Diaz v Massachusetts*, 557 US ___; 129 S Ct 2527; 174 L Ed 2d 314 (2009). In *Melendez-Diaz*, the United States Supreme Court concluded that certain affidavits—which certified the out-of-court findings of

nontestifying laboratory analysts—constituted testimonial hearsay because they had been prepared for the purpose of establishing an element of the criminal charges against the defendant. The *Melendez-Diaz* Court concluded that the hearsay affidavits were consequently inadmissible against the defendant "[a]bsent a showing that the analysts were unavailable to testify at trial *and* that [the defendant] had a prior opportunity to cross-examine them . . . ." *Id.* at ___; 129 S Ct at 2532 (emphasis in original). Because Judge SAAD's opinion in *Lonsby* fully comports with the recent decision in *Melendez-Diaz*, we adopt the reasoning of *Lonsby* as our own.

Similar to the facts of *Lonsby* and *Melendez-Diaz*, in the instant case, DNA testing was conducted and it resulted in the generation of laboratory reports that were used against defendant at trial. Just as the nontestifying laboratory analysts in *Melendez-Diaz* knew that their affidavits would later be used in criminal proceedings to establish that the defendant in that case had possessed cocaine, it is clear to us that the nontestifying analyst who generated the reports in the present case must have known that the purpose was to ultimately establish the perpetrator's identity through DNA evidence. Although the witnesses who actually testified concerning the laboratory reports at issue here had basic knowledge concerning DNA testing and the methods used to prepare the reports in general, they had not personally conducted the testing, had not personally examined the evidence collected from the victims, and had not personally reached any of the scientific conclusions contained in the reports. In short, the laboratory reports admitted in Kent Circuit Court Case Nos. 06-011607-FC and 06-011944-FC constituted testimonial hearsay, *Lonsby*, 268 Mich App at 392-393, and "[a]bsent a showing that the analyst[] [was] unavail-

able to testify at trial *and* that [defendant] had a prior opportunity to cross-examine [the analyst]," defendant "was entitled to ' "be confronted with" ' the analyst[] at trial," *Melendez-Diaz*, 557 US at ___; 129 S Ct at 2532, quoting *Crawford*, 541 US at 54. No such showing was ever made. Accordingly, the trial court plainly erred by admitting the laboratory reports of the nontestifying analyst in Kent Circuit Court Case Nos. 06-011607-FC and 06-011944-FC.

Of course, although defense counsel did object to the admission of the laboratory reports on the ground that they were inadmissible under the rules of evidence, counsel did not object to the admission of the reports on Confrontation Clause grounds. Therefore, defendant's Confrontation Clause argument was not preserved, *People v Bauder*, 269 Mich App 174, 177-178; 712 NW2d 506 (2005), and we must therefore determine whether the plain constitutional error affected defendant's substantial rights, *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). In order to avoid forfeiture under the plain-error rule, it must be shown that the plain error affected the outcome of lower court proceedings. *Id.* at 763. And even then, we will generally reverse only if the defendant is actually innocent or the error has seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence. *Id.* at 763-764.

After reviewing the record, we are compelled to conclude that the improperly admitted laboratory reports were decisive to the outcome of defendant's trial. Taken together, the DNA laboratory reports far and away constituted the single most condemning piece of evidence introduced against defendant in Kent Circuit Court Case Nos. 06-011607-FC and 06-011944-FC. Unlike Kent Circuit Court Case No. 06-012819-FH, in

which defendant admitted that he had solicited the victim for sex, defendant never admitted to any contact whatsoever with the victims in Kent Circuit Court Case Nos. 06-011607-FC and 06-011944-FC. No other physical evidence linked defendant to the crimes. Indeed, only the DNA evidence contained in the hearsay laboratory reports tied defendant to the victims in Kent Circuit Court Case Nos. 06-011607-FC and 06-011944-FC. Albeit in a different context, this Court has recognized the "significant possibility" that a jury might attribute preemptive or undue weight to improperly admitted DNA evidence. *People v Coy*, 243 Mich App 283, 302-303; 620 NW2d 888 (2000). We simply cannot say that the jury would have convicted defendant in Kent Circuit Court Case Nos. 06-011607-FC and 06-011944-FC if the improper hearsay reports had been excluded from consideration. Defendant has sufficiently demonstrated that the plainly erroneous admission of the testimonial hearsay reports affected the outcome of the lower court proceedings. *Carines*, 460 Mich at 763-764.

We also believe that the erroneous admission of the testimonial hearsay evidence affected the fairness and integrity of defendant's trial. *Id*. at 764. There simply was no other independent and properly admitted evidence of defendant's guilt sufficient to erase or overcome the overwhelming taint of the improperly admitted hearsay reports. See *Coy*, 243 Mich App at 313. Although the *Carines* plain-error rule sets a high bar for appellate review in cases of unpreserved error, we conclude that the plainly erroneous admission of the testimonial DNA reports in Kent Circuit Court Case Nos. 06-011607-FC and 06-011944-FC affected the fairness and integrity of the judicial proceedings. *Carines*, 460 Mich at 764.[7]

---

[7] In contrast to Kent Circuit Court Case Nos. 06-011607-FC and 06-011944-FC, the laboratory analysts who conducted the DNA testing

VII

Given the preserved evidentiary error and outcome-determinative plain constitutional error discussed earlier, we must reverse defendant's convictions and sentences in Kent Circuit Court Case Nos. 06-011607-FC and 06-011944-FC. In general, the constitutional principle of double jeopardy does not bar reprosecution after a defendant's original conviction has been reversed on appeal. *Green v United States*, 355 US 184, 189; 78 S Ct 221; 2 L Ed 2d 199 (1957); *United States v Wilson*, 534 F2d 76, 78 (CA 6, 1976). The exception to this rule, of course, is that double jeopardy bars reprosecution after a conviction has been reversed on the ground of "evidentiary insufficiency" or "failure of proof at trial." *Burks v United States*, 437 US 1, 15-16; 98 S Ct 2141; 57 L Ed 2d 1 (1978). However, we have reversed defendant's convictions in Kent Circuit Court Case Nos. 06-011607-FC and 06-011944-FC on the basis of trial error rather than evidentiary insufficiency. Thus, the prosecution may retry defendant on these charges if it so chooses.

Defendant's convictions and sentences in Kent Circuit Court Case Nos. 06-011875-FC and 06-012819-FH are affirmed. Defendant's convictions and sentences in Kent Circuit Court Case Nos. 06-011607-FC and 06-011944-FC are reversed.

Affirmed in part and reversed in part. We do not retain jurisdiction.

---

and prepared the laboratory reports in Kent Circuit Court Case Nos. 06-011875-FC and 06-012819-FH *did* testify at trial. We perceive no evidentiary or Confrontation Clause error with respect to the admission of the laboratory reports in Kent Circuit Court Case Nos. 06-011875-FC and 06-012819-FH.