# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

TORIUS INGE,

      Defendant-Appellant.

UNPUBLISHED
October 23, 2018

No.  337346
Wayne Circuit Court
LC No.  16-008119-01-FC

---

Before:  SHAPIRO, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

Defendant appeals his jury trial conviction of second-degree murder, MCL 750.317, for which he was sentenced to 450 to 800 months' imprisonment.[1]  Defendant contends that the admission of DNA evidence at trial violated his rights under the Confrontation Clause of the Sixth Amendment, and that his counsel was ineffective for failing to object to the evidence.  We conclude that the admission of the DNA evidence against defendant constituted plain error, but that this error was harmless given that defendant testified and admitted that it was the victim's blood on his clothing.  Therefore, we affirm.

## I. FACTUAL BACKGROUND

While responding to a dwelling fire, firefighters found the body of Grace Hughes in the burning house.  The medical examiner determined that Hughes's cause of death was the 67 stab wounds observed on her body.  Defendant became a suspect after police discovered surveillance video recordings placing him near the scene of the crime around the time that the fire was started.  When defendant was found and arrested, officers observed blood on defendant's clothing and scratches on his face.

Defendant's clothing was sent to the Michigan State Police DNA Laboratory for testing, and three laboratory reports were generated and admitted into evidence at trial.  The first report, authored by Rebecca Skaglin, tested several items for the presence of blood.  Defendant's jacket and sweatpants tested positive for blood, but Skaglin did not perform any testing intended to

---

[1] The jury acquitted defendant of third-degree arson, MCL 750.74.

-1-

identify whose blood was on these items. The second report, authored by Ann Hunt, involved the extraction of DNA from these items, as well as from the samples obtained from the victim and defendant, and the creation of DNA profiles as to each sample in graph form. With respect to defendant's sweatpants, Hunt detected a DNA profile "consistent with a female contributor" that would require further analysis. Hunt also determined that the DNA profiles extracted from defendant's jacket indicated "a mixture of multiple contributors" that would require further analysis. Michelle Schmitt authored the final report, which involved taking the DNA profiles determined and recorded by Hunt and inputting them into a computer program that compared them against the victim's and defendant's DNA profiles. Schmitt concluded that the bloodstains on defendant's clothing contained the victim's DNA.

At trial, Schmitt was the only forensic analyst who testified. Defendant testified in his defense and admitted that the blood on his clothing belonged to the victim. According to defendant, a few days before the victim's death she cut her hand and some of her blood made it onto his clothing while they were "fooling around."

## II. ANALYSIS

Defendant argues on appeal that admission of the laboratory reports without testimony from Skaglin and Hunt violated his confrontation rights, and that Schmitt's testimony was rendered inadmissible as a result. We agree with defendant that the trial court improperly admitted Hunt's report and Schmitt's expert opinion, but conclude that the error was harmless in this case.

Because defendant did not object at any point to the admission of the reports at issue or argue that the reports violated his confrontation rights, this issue is unpreserved. *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003). We review unpreserved constitutional errors under a plain-error analysis. *Id*. Under this standard, defendant must show (1) an error occurred, (2) the error was clear and obvious, and (3) the error affected defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Generally, an error affects a defendant's substantial rights when it prejudices him, or when it "affect[s] the outcome of the lower court proceedings." *Id*.

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." US Const, Am VI; see also Const 1963, Art 1 § 20. "The Confrontation Clause of the Sixth Amendment bars the admission of testimonial hearsay unless the declarant is unavailable and the defendant has had a prior opportunity for cross-examination." *People v Payne*, 285 Mich App 181, 197; 774 NW2d 714 (2009). Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). The admission of a non-testifying expert's report offends a defendant's confrontation rights when the report is used as substantive evidence against the defendant. *People v Fackelman*, 489 Mich 515, 528; 802 NW2d 552 (2011). More specifically, this Court has concluded that laboratory reports containing the results of DNA testing prepared by non-testifying analysts are testimonial hearsay subject to the Confrontation Clause of the Sixth Amendment. *Payne*, 285 Mich App at 198-199.

To begin, we conclude that the prosecution did not use Skaglin's report to prove the truth of the matter asserted therein, i.e., that blood was found on defendant's clothing, but instead to provide background information to explain why Hunt was then tasked with analyzing the items for DNA. Indeed, multiple witnesses testified to observing blood on defendant.

However, unlike Skaglin's report, Hunt's report was central to the determination that defendant's clothing contained the victim's DNA. Hunt extracted DNA from known samples from defendant and the victim and determined their DNA profiles, which she set forth in graph form. Hunt also conducted testing on the evidentiary items and determined that the blood on defendant's sweatpants had a DNA profile indicating that it was from a female but required further analysis. She also determined that defendant's jacket contained DNA from numerous individuals that required further analysis. These DNA profiles were set forth in graph form as well. Schmitt then took the graphs prepared by Hunt and used a computer program that statistically compares DNA profiles. Schmitt reported the program's finding that the blood on defendant's pants and jacket matched the victim's DNA. This determination, however, rested on Hunt's isolation of the DNA and her findings as to the DNA profile for each donor. We thus conclude that Hunt's report constituted substantive evidence used for the truth of the matter asserted within. Defendant did not have the opportunity to cross-examine Hunt, and the prosecutor did not prove her unavailability to testify. For those reasons, it is clear that the report prepared by Hill was testimonial hearsay and its admission into evidence violated defendant's constitutional rights under the Confrontation Clause.

Further, because Hunt's extraction of the DNA profiles was a necessary basis for Schmitt's opinion, that opinion itself was inadmissible in the absence of Hunt's report being properly admitted into evidence. See MRE 703 ("The facts or data in the particular case upon which an expert bases an opinion or inference shall be in evidence."); see also *People v Dendel (On Second Remand)*, 289 Mich App 445, 471-473; 797 NW2d 645 (2010) (holding that expert testimony based on a report prepared by non-testifying forensic analysts violated defendant's confrontation rights).[2] Thus, Schmitt's conclusion that defendant's clothing contained the victim's DNA was erroneously presented to the jury.

---

[2] Since *Dendel*, the United States Supreme Court decided *Williams v Illinois,* 567 US 50; 132 S Ct 2221; 183 L Ed 2d 89 (2012), holding that under the circumstances in that case, it was not a violation of the Confrontation Clause to allow an expert to rely on laboratory results performed by another technician. That plurality decision rested on the Court's determination that the testifying expert's reference to a DNA profile obtained from an outside laboratory was not presented for the truth of the matter asserted therein and that the outside lab's report was not testimonial because it was produced before the defendant was identified as a suspect. *Id*. at 57-58. This case is distinguishable on both grounds. First, in *Williams*—a bench trial—the testifying expert merely confirmed that the outside lab found a male DNA profile in the tested material; the outside report was not admitted into evidence. *Id*. at 70-72. Here, Hunt's report was admitted into evidence and showed that she was testing the items for the presence of defendant's and the victim's DNA. Schmitt then testified at length about Hunt's procedure and results. For the reasons discussed, we conclude that Hunt's report and Schmitt's testimony

We nevertheless affirm defendant's conviction because we conclude that this error was harmless in light of defendant's testimony in which he admitted that the victim's blood was on his clothing. Defendant does not argue that he would not have testified but for the DNA evidence presented against him. Indeed, there are several other reasons why defendant may have chosen to testify. Defendant's testimony gave context to his relationship with the victim, and he testified to his whereabouts at the time the victim as killed. Defendant's testimony also addressed the witnesses who observed blood on defendant around the time of offense and provided the jury an explanation for a scratch on his face that witnesses observed and testified to. In sum, we are not convinced that the absence of the laboratory DNA evidence would have led to a different result in this case. Accordingly, defendant has not established that he is entitled to relief under plain-error review.

For the same reason, defendant does not establish that he was denied effective assistance of counsel. "To establish a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *People v Riley (After Remand)*, 468 Mich 135, 140; 659 NW2d 611 (2003). To show prejudice, "the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). As discussed, defendant's claim of ineffective assistance of counsel fails because he cannot show that he was prejudiced by defense counsel's failure to object to the admission of the DNA evidence.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Deborah A. Servitto
/s/ Michael F. Gadola

---

thereof constituted out-of-court statements used to prove the truth asserted therein, i.e., hearsay. Second, Hunt's report was testimonial because her work was performed for the purpose of obtaining evidence against defendant. Further, the relevant state rule of evidence in *Williams*, like Federal Rule of Evidence 703, allowed an expert to testify based upon material that had not been admitted into evidence. *Id*. at 69. In significant contrast, MRE 703 requires that "the facts and data in the particular case upon which an expert bases and opinion or inference shall be in evidence."