*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

WILLIE LEWIS JOHNSON, JR.,

        Defendant-Appellant.

UNPUBLISHED
March 21, 2024

No. 363544
Lenawee Circuit Court
LC No. 2021-020392-FH

Before: FEENEY, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

A jury convicted defendant of assault of a prison employee, MCL 750.197c, assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, assault with a dangerous weapon (felonious assault), MCL 750.82, and prisoner possessing weapon, MCL 800.283(4). The trial court sentenced him to two to five years' imprisonment for the assault of a prison employee conviction, 76 to 120 months' imprisonment for the AWIGBH conviction, 17 to 48 months' imprisonment for the felonious assault conviction, and two to five years' imprisonment for the prisoner possessing weapon conviction. Defendant appeals as of right. Because the trial court denied defendant's repeated requests to have his handcuffs removed while representing himself at the jury trial, we reverse.

This case arises out of an assault upon Corrections Officer Michael Lennox at the Gus Harrison Correctional Facility in Adrian, Michigan, where defendant was an inmate. Defendant represented himself at trial and the Lenawee County Public Defender's Office was appointed as standby counsel. Before the trial began and outside the presence of the jury, defendant twice requested the removal of his handcuffs. The trial court denied the request because the court did not believe the Michigan Department of Corrections would allow it. Defendant then asked, "I have to go through trial with handcuffs on?" The trial court responded by asking standby counsel to sit next to defendant to turn the pages of the preliminary instructions for him. Defendant then said "That's all right. That's all right."

Officer Lennox testified that he found and confiscated contraband in defendant's cell while doing rounds on defendant's unit. Officer Lennox wrote defendant a misconduct ticket for the

-1-

contraband. Approximately one hour later, Officer Lennox was making his rounds on defendant's unit when he felt defendant approaching him from behind. Officer Lennox warned defendant not to do whatever he was thinking of doing. Officer Lennox later made rounds again on defendant's unit and saw defendant in the doorway of his cell. When Officer Lennox arrived at defendant's cell, defendant made a slight lunge at Officer Lennox. Officer Lennox walked around defendant and continued down the unit. Officer Lennox turned and saw defendant quickly approaching Officer Lennox with defendant's hand behind his back. Officer Lennox thought that defendant might have a weapon behind his back and told defendant not to do anything crazy. Before Officer Lennox could finish his statement, defendant struck Officer Lennox. Officer Lennox put defendant in a headlock, punched him, and "hip tossed" defendant to the ground. Officer Lennox testified that he saw a bloody plastic shank on a string dangling from defendant's hand. Officer Lennox realized he had been stabbed. Officer Lennox's partner, Officer Breanna Gilson, arrived and sprayed defendant with a chemical agent.

After the prosecution rested its case, defendant testified that he was incarcerated at the Gus Harrison Correctional Facility when he was in a physical confrontation with Officer Lennox. Defendant testified that he walked up behind Officer Lennox while Officer Lennox was making his rounds on defendant's unit. Officer Lennox turned around and asked, "What do you wanna do?" After turning away, defendant saw Officer Lennox flinch and make a motion with his head. In response, defendant testified that he leaned forward and started stabbing Officer Lennox. Officer Lennox took defendant to the ground and repeatedly punched defendant in the eye.[1] Defendant continued to stab Officer Lennox. Defendant testified that he had to protect himself because he is a handicapped prisoner and he was not going to let Officer Lennox bully him. At the conclusion of his testimony, defendant told the jury, "Please find me guilty tomorrow."

After the prosecution's closing argument, the parties and the trial court reviewed proposed jury instructions outside the presence of the jury. Standby counsel requested a self-defense jury instruction. The prosecution objected because defendant presented insufficient evidence to raise a self-defense claim. The trial court instructed the jury on self-defense over the prosecution's objection. The jury returned a verdict of guilty on all charges. Defendant now appeals.

Defendant argues that the trial court denied him due process of law because defendant was forced to appear before the jury in shackles, including handcuffs, which was prejudicial to defendant and undermined the presumption of innocence. We agree that the trial court abused its discretion by requiring defendant to remain visibly shackled while representing himself in front of the jury.

This Court reviews for abuse of discretion a trial court's decision whether to shackle a defendant at trial. *People v Payne*, 285 Mich App 181, 186; 774 NW2d 714 (2009). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Rose*, 289 Mich App 499, 524; 808 NW2d 301 (2010). "But even if a trial court abuses its discretion and requires a defendant to wear restraints, the defendant must show

---

[1] Defendant testified that he's a "handicapped prisoner. I have a brain tumor, broken neck, and one eye."

that he suffered prejudice as a result of the restraints to be entitled to relief." *Payne*, 285 Mich App at 186.

"[N]o person should be tried while shackled and gagged except as a last resort." *Illinois v Allen*, 397 US 337, 344; 90 S Ct 1057; 25 L Ed 2d 353 (1970). As the United States Supreme Court observed in *Deck v Missouri*, 544 US 622, 632-632; 125 S Ct 2007; 161 L Ed 2d 953 (2005):

> [J]udges must seek to maintain a judicial process that is a dignified process. The courtroom's formal dignity, which includes the respectful treatment of defendants, reflects the importance of the matter at issue, guilty or innocence, and the gravity with which Americans consider any deprivation of an individual's liberty through criminal punishment. And it reflects a seriousness of purpose that helps to explain the judicial system's power to inspire the confidence and to affect the behavior of a general public whose demands for justice our courts seek to serve. The routine use of shackles in the presence of juries would undermine these symbolic yet concrete objectives. As this Court has said, the use of shackles at trial "affront[s]" the "dignity and decorum of judicial proceedings that the judge is seeking to uphold." *Allen, supra*, at 344, 90 S Ct 1057. . . .

> There will be cases, of course where these perils of shackling are unavoidable. We do not underestimate the need to restrain dangerous defendants to prevent courtroom attacks or the need to give trial courts latitude in making individualized security determinations. We are mindful of the tragedy that can result if judges are not able to protect themselves and their courtrooms. *But given their prejudicial effect, due process does not permit the use of visible restraints if the trial court has not taken account of the circumstances of the particular case.* [Emphasis added; citation omitted.]

Indeed, here, as in *Deck*, **"**visible shackling undermines the presumption of innocence and the related fairness of the factfinding process," and "it suggests to the jury that the justice system itself sees a 'need to separate a defendant from the community at large.' " *Id.* at 630. This is why, absent extraordinary circumstances, the right to a fair trial includes "the right to be free of shackles or handcuffs in the courtroom." *Payne*, 285 Mich App at 186. The Michigan Supreme Court has recognized that a defendant may be shackled at trial "only on a finding supported by record evidence that shackling is necessary to prevent escape, injury to persons in the courtroom, or to maintain order." *People v Dunn*, 446 Mich 409, 411; 521 NW2d 255 (1994). The existence of circumstances warranting restraints must be supported by the record. *Payne*, 285 Mich App at 186. If a trial court requires a defendant to wear shackles visible to the jury without making adequate justification, "[t]he State must prove 'beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained.' " *Deck v Missouri*, 544 US at 635 quoting *Chapman v California*, 386 US 18, 24; 87 S Ct 824; 17 L Ed 2d 705 (1967) (alteration in original).

In *Deck*, the defendant was convicted of murdering an elderly couple; during trial, he was required to wear leg braces that the jury could not see. *Deck*, 544 US at 624. After the defendant was sentenced to death, he appealed and the Missouri Supreme Court affirmed the conviction but reversed the sentence. At the new sentencing proceeding, the defendant was "shackled with leg

irons handcuffs, and a belly chain. Before the jury voir dire began, Deck's counsel objected to the shackles" but to no avail; the trial court noted that he had already been convicted and would remain in shackles. *Id.* at 625-626. The United States Supreme Court determined that the Constitution does not permit the visible use of shackles in the guilt phase of a criminal trial: "The law has long forbidden routine use of visible shackles during the guilt phase; it permits a state to shackle a criminal defendant only in the presence of a special need." *Id.* at 626. The record did not contain any findings regarding a risk of escape, a threat to security, or a reason for fear. *Id.* "If there is an exceptional case where the record itself makes clear that there are indisputably good reasons for shackling, it is not this one." *Id.*

Similarly, the trial court here abused its discretion when it required defendant to remain shackled during trial. The record contains no findings supporting the need to have defendant, who was representing himself at the jury trial, remain in shackles visible to the jurors.[2] The trial court merely denied defendant's repeated requests for removal of his restraints because the trial court did not believe the Michigan Department of Corrections would allow defendant to appear unshackled. The trial court did not make a finding that shackling was "necessary to prevent escape, injury to persons in the courtroom, or to maintain order." *Deck*, 544 US at 635; *Dunn*, 446 Mich at 411. Moreover, there are no circumstances evident from the record warranting restraints.[3] *Payne*, 285 Mich App at 186.

Although the record does not clearly indicate whether the shackles were visible to the jury, defendant must have conducted voir dire, cross-examined witnesses, and testified—all while

---

[2] See *People v Horton*, 506 Mich 966; 950 NW2d 739 (2020) (MCCORMACK, C.J., dissenting from the denial for leave to appeal where the defendant was shackled at the jury trial and represented himself but was confined to counsel table so the jury could not see his shackles from behind a "shrouded table").

[3] Notably, effective January 1, 2024, MCR 6.009(A) now states that "[i]nstruments of restraint, such as handcuffs, chains, irons, or straitjackets, cloth and leather restraints, and other similar items, may not be used on a defendant during a court proceeding that is or could have been before a jury unless the court finds, using record evidence, that the use of restraints is necessary due to one of the following factors: (1) Instruments of restraint are necessary to prevent physical harm to the defendant or another person, (2) The defendant has a history of disruptive courtroom behavior that has placed others in potentially harmful situations or presents a substantial risk of inflicting physical harm on himself or herself or others as evidenced by recent behavior, (3) There is a founded belief that the defendant presents a substantial risk of flight from the courtroom." The new court rule requires a determination that restraints are necessary to be made outside the jury's presence and, "[i]f restraints are ordered, the court shall state on the record or in writing its findings of fact in support of the order." MCR 6.009(B). Moreover, if restraints are deemed necessary, the court must order the least restrictive means of restraint to maintain security and consider the visibility of a restraint, how it impacts the range of movement, and consider video participation, the presence of law enforcement or unobtrusive stun devices as an option. MCR 6.009(D).

wearing shackles.[4]  Defendant's request to remove his handcuffs was denied at the start of trial, so the jury must have seen the handcuffs as he sat at counsel table and while he was examining witnesses and testifying.  Additionally, even if the jury were not paying attention and did not notice the shackles and handcuffs, Officer Lennox and Inspector Leslie identified defendant when they testified and noted that he was wearing restraints.[5]  Clearly, the trial court abused its discretion by requiring defendant to remain visibly shackled in the presence of the jury without making a finding that shackling was necessary to prevent escape, injury, or to maintain order in the courtroom.  "Nor did [the trial court] explain why, if shackles were necessary, [it] chose not to provide for shackles that the jury could not see."  *Deck*, 544 US at 634-635.  Because the trial court erred by requiring defendant to appear before the jury visibly shackled, the prosecution must prove beyond a reasonable doubt that the error did not contribute to the jury's verdict.  *Deck*, 544 US at 635.

The prosecution argues on appeal that the overwhelming evidence of defendant's guilt proves that the shackling error did not contribute to the jury's verdict.  We disagree. The prosecution misstates the test. "[W]here a court, without adequate justification orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation.  The State must prove 'beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained.' "  *Deck*, 544 US 635.   In *Deck*, *supra*, the Missouri Supreme Court's decision upholding the defendant's death penalty sentence was reversed and the case remanded for further proceedings after the defendant was shackled during the jury trial of the death penalty phase.  Cf. *Payne*, 285 Mich App at 186-187 (the defendant was shackled but at counsel table that had a paper skirt around it and he moved to and from the table outside the presence of the jury).  Defendant does not challenge the sufficiency of the evidence at trial to prove the offenses charged; defendant only challenges the sufficiency of the evidence to disprove self-defense.  The prosecution does not explain how seeing defendant in shackles during his trial, where the jury was required to examine his credibility while testifying, did not contribute to the jury's decision; it merely concludes that "[g]iven the overwhelming evidence of Defendant's guilt, it is clear that the shackling error did not contribute to the verdict." Given the totality of the circumstances, we cannot fathom how the prosecution could establish beyond a reasonable doubt that defendant's shackling in front of the jury did not negatively impact the jury's verdict.

The prosecution also argues that the evidence was essentially uncontroverted even by defendant's own testimony, except that defendant testified that he acted in self-defense.  During his testimony, defendant told the jury, "Find me guilty today."  At the conclusion of his testimony,

---

[4] The record does not indicate a break for the jury to be excused between the time that the prosecution rested and when defendant began testifying. It also does not indicate whether defendant testified from counsel table or the witness stand; the trial court merely indicated, "so you can sit here or you can sit there. Which would you prefer? All right. . . ."

[5] These same witnesses identified defendant as wearing a blue jump suit in the courtroom. On appeal, defendant also challenges the fact that he was required to wear jail attire at the jury trial, thereby undermining the presumption of innocence. Because the issue regarding his shackling created a due process basis for reversing the conviction, we will not address this and other issues raised on appeal.

defendant told the jury, "Please find me guilty tomorrow." In light of defendant's statements after being denied the right to remove the handcuffs ("I'm all right, I'm all right"), these statements could indicate defendant's sense of hopelessness regarding his chances for acquittal rather than an outright admission of guilt. And merely because the jury was aware of defendant's status as an inmate given the nature of the offenses charged and defendant's admission that he was incarcerated, there is no exception to the presumption of innocence or the dignity of judicial proceedings for incarcerated defendants. Accordingly, the prosecution failed to prove beyond a reasonable doubt that defendant's erroneous shackling did negatively effect the jury's verdict.

Reversed and remanded for further proceedings consistent with this opinion.

/s/ Kathleen A. Feeney
/s/ James Robert Redford
/s/ Christopher P. Yates