*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* N. R. TIERNAN, Minor.

UNPUBLISHED
March 31, 2022

No. 357076
Oakland Circuit Court
Family Division
LC No. 20-881881-NA

Before: GADOLA, P.J., and BORRELLO and M. J. KELLY, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her minor child under MCL 712A.19b(3)(b)(*i*), (g), (i), and (k)(*iii*). We reverse and remand for further proceedings.

## I. FACTS

The minor child in this case, NRT, is respondent's second child. Respondent's parental rights to her first child were terminated in 2012, when respondent was 21 years old, as a result of respondent's substance abuse, lack of housing, and lifestyle instability. Thereafter, respondent was involved in substance-related criminal incidents, mainly for possession of illegal substances and for operating a vehicle while under the influence of alcohol. Respondent was sentenced to terms of probation for these offenses. Respondent completed substance abuse treatment programs and attended Alcoholics Anonymous and Narcotics Anonymous (AA/NA) in relation to the probation orders.

NRT was born in 2019. After the child's birth, respondent and NRT's father, Tiernan, lived together with the child. Petitioner, Department of Health and Human Services, contacted the couple because respondent's parental rights to her first child had been terminated. Respondent and Tiernan signed a safety plan with petitioner in which they agreed to abstain from alcohol and substance use. Respondent left her job after the COVID-19 pandemic began in March 2020 and began again using marijuana and alcohol during the pandemic lockdown.

On June 10, 2020, police responded to a report of a domestic disturbance at respondent's home. When police arrived, Tiernan had left the home. After the police knocked and called for several minutes, respondent answered the door. Officers entered the home and found shattered

-1-

glass from a broken window on the floor and debris scattered throughout the home. NRT was lying face down on a couch, unsupervised. When officers entered the home, respondent picked up NRT and the officers saw that the child had human bite marks on her face and shoulder, and bruising around her eyes. After speaking with respondent and ascertaining that she was intoxicated, the officers took the child to a hospital where her injuries were treated.

Respondent pleaded no contest to third-degree child abuse, MCL 750.136b(5), and was sentenced to probation. Thereafter, respondent complied with the terms of her probation including participating in individual counseling and substance abuse counseling. Respondent complied with drug and alcohol screening, and successfully completed parenting classes. Respondent's early drug tests indicated low levels of THC, but thereafter respondent's tests were negative for substances.

Meanwhile, petitioner sought termination of respondent's parental rights at the initial dispositional hearing under MCL 712A.19b(3)(b)(*i*), (g), (i), and (k)(*iii*), rather than seeking to reunify respondent with the child. Because petitioner was not seeking to reunify respondent with the child, petitioner did not provide respondent reunification services or allow respondent parenting time with the child.

Respondent retained an attorney who represented her in the criminal matter, and also in the proceedings to terminate her parental rights. Regarding the termination proceedings, counsel advised respondent to admit the allegations of the petition that asserted the trial court's jurisdiction and the statutory grounds for termination in light of the events of June 10, 2020, and respondent's prior history. After respondent admitted the allegations of the petition, the trial court assumed jurisdiction of the child and found that statutory bases existed to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (g), (i), and (k)(*iii*).

The trial court thereafter conducted a hearing to determine whether termination of respondent's parental rights was in the child's best interests. Petitioner called as a witness one of the officers who responded to the June 10, 2020 domestic dispute. The officer testified regarding respondent's intoxication, the condition of the home, and NRT's injuries. To corroborate the officer's testimony, petitioner introduced into evidence the officer's bodycam video, as well as photographs depicting NRT's injuries and the condition of the home.

Petitioner also called as a witness Dr. Melissa Sulfaro, a psychologist employed by the Oakland County Court Psychological Clinic, who testified that she conducted a psychological evaluation of respondent on December 7, 2020. Sulfaro testified that before evaluating respondent she reviewed documentary materials, including the petition, the police report, letters from Easter Seals regarding respondent's therapy, court reports from petitioner's case worker, court records regarding the termination of respondent's rights to her first child, and hospital medical records. Sulfaro testified that based upon respondent's history and the documentary evidence she reviewed, she believed that respondent had not developed adequate skills to cope without using substances. Sulfaro testified that respondent's test results indicated no personality or behavioral disorders. Nonetheless, Sulfaro determined based upon respondent's history of substance use that she might relapse into substance use and that there was a possibility of harm to the child if respondent relapsed. Sulfaro also testified that because respondent had not been permitted parenting time with the child after the child was removed from her care, there was no longer a bond between parent

and child. Sulfaro therefore advised that termination of respondent's parental rights was in the child's best interests.

Respondent testified that from 2016 through 2019, she resolved her prior abuse of narcotics and maintained sobriety. She explained that she started using alcohol and marijuana again in 2020 during the pandemic. She testified that the June 10, 2020 incident made her realize that she should not use any substances, and that she had not used alcohol or drugs since that date. Since then, she had fully engaged in and completed substance abuse therapy, was participating in individual therapy, had resumed attending AA/NA, and had devoted herself to studying the AA/NA literature and working on the 12 steps of recovery. Respondent also testified that she had returned to her previous job and thereafter was promoted to the position of administrative assistant. She was leasing an apartment that she paid for with her earnings.

Respondent's counsel did not call any other witnesses or introduce respondent's therapy progress reports into evidence. Counsel did not introduce documentation of respondent's compliance with her probation or call her probation officer as a witness. Respondent provided her counsel with a certificate of her completion of parenting classes, but counsel did not move for admission of the certificate. Although respondent had been consistently attending AA/NA while maintaining sobriety, counsel did not call respondent's sponsor as a witness. Respondent's counsel did not introduce corroborating evidence of her employment, income, or housing.

At the conclusion of the hearing, the trial court terminated respondent's parental rights to NRT, finding that termination was in the child's best interests. Respondent claimed an appeal to this Court, asserting in part that her attorney was ineffective for failing to present evidence corroborating her testimony that she had made progress in resolving her addiction. This Court granted respondent's motion[1] to remand to the trial court for a *Ginther*[2] hearing on her claim that her attorney was ineffective.

At the *Ginther* hearing, respondent called as a witness her probation officer, who testified that respondent had complied with the requirements of probation; she had refrained from consuming drugs or alcohol, complied with drug and alcohol testing, completed substance abuse treatment, completed cognitive behavior therapy, participated in mental health treatment, completed parenting classes, and was continuing individual therapy with Easter Seals. Respondent also called as witnesses her AA/NA sponsor and an AA/NA participant, who testified regarding respondent's continuing and frequent attendance and participation in AA/NA, and her success in staying sober. Respondent also introduced as exhibits a certificate of respondent's attendance at a parenting class, respondent's apartment lease, the respondent's drug screen results, and respondent's psychological evaluation. In addition, the guardian ad litem for the child informed the trial court that if the information introduced at the *Ginther* hearing had been provided to her

---

[1] *In re N R Tiernan*, unpublished order of the Court of Appeals, entered September 16, 2021 (Docket No. 357076).

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

before the best interests hearing, it would have altered her recommendation and she instead would have urged the trial court to find that termination was not in the child's best interests.

Respondent's trial counsel testified that he represented respondent in the criminal matter arising from the same incident that led to the child protective proceedings. He testified that respondent was sentenced to probation, and that she completely complied with the terms of her probation, including abstaining from using drugs or alcohol and complying with drug and alcohol testing. Respondent also participated in therapy through Easter Seals and provided trial counsel with the progress notes from her therapist, the results of her drug tests, and the certificate of completion of parenting classes.

Respondent's trial counsel testified that despite having documentation of her progress, his strategy at the best interests hearing was to present respondent's own testimony describing her efforts and commitment toward resolving her substance abuse. Counsel testified that he relied solely on respondent's testimony because he believed that the exhibits and corroborating testimony would not convince the court of respondent's commitment if her testimony alone did not do so. He further testified that he believed that the introduction of evidence to corroborate respondent's testimony might suggest that her testimony alone was untrustworthy.

After hearing the evidence presented at the *Ginther* hearing, the trial court found that respondent's trial counsel was not ineffective for failing to call witnesses or introduce documentary evidence to support respondent's assertion that she was maintaining sobriety. The trial court reasoned that respondent had testified that she was maintaining sobriety, and the trial court found her testimony credible. Nonetheless, the trial court was unconvinced that respondent would maintain sobriety in the future despite her recent success. The trial court explained that the corroborating documentation and testimony introduced at the *Ginther* hearing did not dissuade the trial court from its earlier conclusion that termination was in the child's best interests. Respondent's appeal now returns to this Court.

## II. DISCUSSION

### A. INEFFECTIVE ASSISTANCE

Respondent contends that she was denied the effective assistance of counsel at trial. We agree.

Whether respondent was denied the effective assistance of counsel presents a mixed question of fact and constitutional law; we review questions of fact for clear error and questions of law de novo. *In re Mota*, 334 Mich App 300, 318; 964 NW2d 881 (2020). Whether child protective proceedings complied with a parent's due-process rights is a question of constitutional law that we review de novo. *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019). De novo review is independent review of an issue by this Court with no required deference to the trial court's resolution of that issue. *Id*.

In child protective proceedings, parents have the right to counsel. *In re Williams*, 286 Mich App 253, 275; 779 NW2d 286 (2009). The right to counsel includes the right to the effective assistance of counsel. See *In re Londowski*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 355635); slip op at 4 (due process indirectly guarantees the right to the effective

assistance of counsel in child protective proceedings). "Included in the Fourteenth Amendment's promise of due process is a substantive component that 'provides heightened protection against government interference with certain fundamental rights and liberty interests,' " which includes the fundamental right of parents to care for their children and the significant interest of parents in the "companionship, care, custody, and management of their children," which is "an element of liberty protected by due process." *Id*., quoting *In re Sanders*, 495 Mich 394, 409; 852 NW2d 524 (2014).

When analyzing a claim of ineffective assistance of counsel in the context of a child protective proceeding, we apply by analogy the principles applicable to claims of ineffective assistance of counsel developed in the criminal law context. *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016). To establish ineffective assistance of counsel, a respondent must show that (1) counsel's performance fell below an objective standard of reasonableness, and that (2) the deficient performance prejudiced the respondent, meaning that there is a reasonable probability that, but for counsel's deficient performance, there would have been a different outcome. *People v Jurewicz*, 506 Mich 914, 915 (2020), citing *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012); see also *In re Mota*, 334 Mich App at 318-319. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id*. at 319.

A respondent is entitled to have his or her counsel prepare, investigate, and present all substantial defenses, which are defenses that might make a difference in the outcome of the trial. See *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). However, decisions about which defenses and arguments to present are matters of trial strategy regarding which counsel is afforded broad discretion. *People v Pickens*, 446 Mich 298, 325; 521 NW2d 797 (1994). Specifically, the decision whether to call witnesses is a matter of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). There is a strong presumption that trial counsel's decision-making is the result of sound trial strategy, *People v White*, 331 Mich App 144, 149; 951 NW2d 106 (2020), and the respondent must overcome that strong presumption to demonstrate that counsel was ineffective. See *Trakhtenberg*, 493 Mich at 52. We do not substitute our judgment for counsel's on matters of trial strategy, nor do we use the benefit of hindsight to assess counsel's competence. *People v Unger*, 278 Mich App 210, 243; 749 NW2d 272 (2008). However, "a court cannot insulate the review of counsel's performance by calling it trial strategy;" counsel's strategy must be sound, and counsel's decisions regarding strategy must be objectively reasonable. *Trakhtenberg*, 493 Mich at 52.

In this case, respondent contends that her trial counsel was ineffective because he failed to call witnesses and introduce documentary evidence to corroborate her testimony that she had made progress in resolving her addiction. Respondent's counsel testified on remand that his strategy during the best interests hearing was to rely on respondent's own testimony to convince the trial court that she was truly committed to her sobriety. He explained that he believed her presentation could stand on its own merits, uncorroborated by documentary evidence or other witnesses' testimony, which he thought would be superfluous. He further testified that introducing evidence corroborating respondent's testimony would have suggested that her testimony required corroboration.

We are not persuaded that counsel's strategy was objectively reasonable.[3] Corroborating evidence is neither superfluous nor a suggestion that a witness is less than credible. For example, the prosecutor in this case called as a witness the police officer who responded to the June 10, 2020 call to respondent's home. The officer testified regarding respondent's intoxication, the condition of the home, and NRT's injuries. There was no suggestion that the officer's testimony was not credible; in fact, the trial court found all the witnesses to be credible. Nonetheless, to corroborate the officer's testimony, petitioner introduced into evidence the officer's bodycam video of the incident, as well as photographs taken at the scene by police depicting NRT's injuries and the condition of the home. There is no indication that the exhibits were considered superfluous, nor was their introduction a suggestion that the officer's testimony needed bolstering. Rather, the exhibits were introduced as objective corroboration of the officer's subjective description of what he observed and to provide the trial court with the most complete information available.

We agree with counsel that it was critical to respondent's case that the trial court find her testimony credible; however, the testimony of a mother at risk of losing her child that she is maintaining sobriety requires corroboration. If this were not true, trial courts would not require parents in child protective proceedings to submit to drug testing, prove that they participated in therapy and parenting classes, verify their employment and income, prove that their housing is appropriate, and demonstrate to the court through numerous parent-child visits supervised by foster care case workers that they are ready to resume custody of their children. Rarely, if ever, would a child be returned to a parent's custody based solely on the unsubstantiated assertion of the parent that she had conquered addiction.

In this case, respondent testified that she urged her attorney to call as witnesses her probation officer to testify that she had successfully completed probation by complying with all services, her AA/NA sponsor and another AA/NA participant who could testify regarding her regular and sincere participation, and her therapists through Easter Seals who could report her progress and her sincere efforts to remain sober. Counsel also could have sought to call as a witness respondent's employer to testify regarding respondent's promotion and income, and to verify that she was maintaining sobriety during working hours. Counsel could have sought to introduce documentation and photographs to demonstrate that respondent was maintaining

---

[3] The trial court erred in its statement of the law in its opinion after the *Ginther* hearing that "a trial court commits reversible error in granting a new trial after a *Ginther* hearing predicated upon ineffective assistance of counsel if the defendant fails to show that the asserted failure to call witnesses 'deprive[d] the defendant of a substantial defense.'" Respondent was not required to show that trial counsel's failure to call witnesses deprived her of a substantial defense in order to obtain relief for ineffective assistance of counsel. *Jurewicz*, 506 Mich at 915. Rather, a claim of ineffective assistance based upon trial counsel's failure to call witnesses is assessed under the same standard applicable to all other claims of ineffective assistance, namely, whether counsel's performance fell below an objective standard of reasonableness and whether the deficient performance prejudiced the respondent. *Id*.

adequate housing. Counsel's failure to seek to introduce such corroborative evidence was objectively unreasonable.

We also are unpersuaded that counsel's deficient performance did not prejudice respondent. As discussed, a respondent has been prejudiced if there is a reasonable probability that, but for counsel's deficient performance, there would have been a different outcome. *Jurewicz*, 506 Mich 914 (2020). A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *In re Mota*, 334 Mich App at 319.

At the time of the best interests hearing, the statutory bases for termination of respondent's parental rights had been established by respondent admitting the allegations of the petition. Once a statutory basis for termination was demonstrated, the trial court was required to terminate respondent's rights if a preponderance of the evidence established that termination was in the best interests of the child. See MCL 712A.19b(5); see also *In re Mota*, 334 Mich App at 320. A "preponderance of the evidence" means evidence that, when weighed against the opposing evidence, has more convincing force and the greater probability of the truth. *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008).

The trial court was thus tasked with weighing the evidence of the child's best interests to determine whether the evidence favoring termination or the evidence opposing termination had more convincing force and the greater probability of the truth. After the *Ginther* hearing, the trial court concluded that even if respondent had introduced the additional evidence at the best interests hearing, it nonetheless would have determined that termination was in the child's best interests. The trial court therefore found that counsel's failure to present the evidence did not prejudice respondent, and that trial counsel's representation of respondent had not been ineffective.

Despite the trial court's faith in the inevitability of that outcome, we cannot agree when contrasting the dearth of evidence presented on behalf of respondent at the best interests hearing with the ample evidence available. Our de novo review of this constitutional issue suggests a reasonable probability of a different outcome, being a probability sufficient to undermine our confidence in that preordained outcome. See *In re Mota*, 334 Mich App at 319. We therefore hold that respondent's trial counsel's deficient representation resulted in prejudice to respondent, and thus was ineffective.

## B. BEST INTERESTS

Respondent also contends that the trial court erred in determining that termination of her parental rights was in the best interests of the child. We agree.

We review the trial court's determination regarding the best interests of the child for clear error. *In re Keillor*, 325 Mich App 80, 93; 923 NW2d 617 (2018). The trial court's decision is clearly erroneous if, although there is evidence to support the decision, reviewing the entire record we have a firm and definite conviction that a mistake has been made. *Id*.

When determining whether the termination of parental rights is in a child's best interests, the trial court should weigh all evidence available to it. *Id*. at 93-94. In doing so, the trial court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, the advantages

of the foster home over the parent's home, the length of time the child was in care, the likelihood that the child could be returned to the parent's home in the foreseeable future, and the parent's compliance with the case service plan. See *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63-64; 874 NW2d 205 (2015). The trial court also should consider the child's safety and well-being, including the risk of harm a child might face if returned to the parent's care. See *In re VanDalen*, 293 Mich App 120, 141-142; 809 NW2d 412 (2011).

In this case, the trial court initially determined that termination of respondent's parental rights was in the child's best interests because the child would be at risk of harm if returned to respondent's care in light of respondent's past substance abuse. At the *Ginther* hearing, evidence was introduced to corroborate respondent's earlier testimony that she had been sober for several months and was taking all possible steps to remain sober. The trial court concluded that despite the corroborating evidence, termination of respondent's parental rights was still in the child's best interests; the trial court reasoned that it had found respondent's earlier testimony of sobriety credible but nonetheless found that termination was appropriate because respondent might relapse in the future despite her efforts toward sobriety. In reaching this conclusion, the trial court appears to have focused upon the single factor of the evaluating psychologist's prediction that respondent is likely to relapse.

Typically, when a child is removed from a parent's custody the petitioner attempts to reunify the child with the parent. In those instances, to aid the parent in rectifying whatever circumstance caused the child to be removed, the parent is offered numerous services, such as substance abuse testing and treatment, counseling, parenting classes, and assistance obtaining employment and housing. Unfortunately, it is often the case that the parent is unwilling or unable to benefit from the offered services, and in those cases, the petitioner ultimately seeks termination of the parent's parental rights. In those cases, the petitioner presents evidence of the parent's lack of progress, i.e., evidence that the parent did not participate in drug testing or tested positive for substances, did not complete parenting classes, did not attend AA/NA, did not participate in therapy, did not establish a stable source of income, and did not establish adequate housing. These are the proofs that typically defeat the parent's argument that the child should be returned to his or her care.

Antithetical to the typical case, here the record supports respondent's report of substantial progress. At the best interests hearing in this case, respondent testified that she was maintaining sobriety, housing, and employment, as demonstrated by her compliance with services provided as a requirement of her probation, despite not being provided services by petitioner. The evidence introduced at the *Ginther* hearing corroborated her testimony. Two of the witnesses at the *Ginther* hearing, respondent's AA/NA sponsor and another participant in the program, testified that respondent's participation in and commitment to the program was remarkable, and that they had never previously testified on behalf of a respondent in a child protection proceeding. Such was their belief in respondent's commitment to sobriety. The trial court found respondent's testimony credible, and no evidence was introduced to refute her sobriety. The trial court found, however, that termination was in the best interests of the child because the trial court remained unconvinced that respondent's sobriety would continue into the future because her newly-found sobriety had not been demonstrated for more than several months.

We agree that the safety of the child is paramount and appreciate the trial court's caution in this regard. However, the barrier to reunification identified in this case is the prediction that respondent will not remain sober for long, presenting an opportunity to provide the willing respondent in this case with the time and services to demonstrate that she can remain sober, and thus overcome the barrier to reunification. This is the course the trial court should have taken.

We reverse the order of the trial court terminating respondent's parental rights to NRT, and remand the matter to the trial court for further proceedings. We direct the trial court to establish a temporary wardship for NRT and direct petitioner to commence appropriate efforts toward reunification of respondent and NRT, including parenting time. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Michael J. Kelly