*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
October 6, 2022

Plaintiff-Appellee,

v

No. 354073
Grand Traverse Circuit Court

ROBERT JENSEN SCHWANDER,

LC No. 11-011239-FC

Defendant-Appellant.

Before: MURRAY, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his resentencing to 33 to 50 years' imprisonment for his conviction of second-degree murder, MCL 750.317, for the killing of 16-year-old Carly Lewis when defendant was 17 years old. We affirm.

## I. BACKGROUND AND PROCEDURAL HISTORY

This is defendant's third appeal. The first appeal, resolved in 2013, summarized the background facts as follows:

> On June 2, 2011, defendant murdered 16-year-old Carly Lewis in an abandoned building where he had been living. Defendant knew Lewis and had lived in her mother's house until he was told to leave. On the day of the murder, defendant and Lewis planned to meet to smoke marijuana, which they did. When Lewis noticed that several items from her mother's house were in the building where defendant was living, they argued. The argument became physical and concluded with Lewis dead. Defendant then went on a date with his girlfriend. He returned to the building, removed Lewis' clothes and buried her near the building. Seven days later, he removed the body, placed it in garbage bags, and reburied it nearby. When questioned by police about Lewis' disappearance, defendant denied any knowledge.
>
> The police investigated the building where defendant lived and broken scissors were discovered in the drop ceiling. Upon further questioning, on June 14,

defendant told police that Lewis was dead and directed them to where she was buried. He denied stabbing Lewis, but admitted that he had choked her to death. Forensic analysis later confirmed that blood on the scissors was Lewis' blood. The victim's body was recovered after using a rod to probe underground in order to find its exact location. An autopsy revealed that Lewis had several slit like stab wounds, including three on the left side of her face, two on her left breast, one on her right bicep, two on her right wrist, and one on the left side of her neck that extended downward and punctured her lung. A blunt force injury to her forehead was also noted. The forensic pathologist who performed the autopsy testified that evidence of strangulation was not present, that the stab wounds were inflicted while Lewis was alive and that some of the stab wounds were defensive in nature. He also opined that the cause of death was the stab wound that punctured Lewis' lung and that with prompt medical attention, she could have survived. A forensic pathologist, who testified for the defense, testified that the lung wound would not have resulted in death and that strangulation could not be ruled out.

Defendant was charged with open murder, MCL 750.316. A jury trial was held and defendant was convicted of second-degree murder. [*People v Schwander*, unpublished per curiam opinion of the Court of Appeals, issued January 31, 2013 (Docket No. 307921) (*Schwander I*), pp 1-2.]

The trial court sentenced defendant to serve 40 to 70 years' imprisonment, an upward departure from the guidelines minimum range of 162 to 270 months. Defendant appealed and this Court, while retaining jurisdiction, remanded the case for further proceedings because the trial court, despite articulating substantial and compelling reasons for its departure sentence, failed to explain why those reasons justified the extent of the departure from the then mandatory guidelines minimum sentence range. *Id*. at 5. On remand, the trial court reduced defendant's minimum sentence to 38 years, but again did not explain the court's rationale for the extent of the departure sentence. This Court vacated defendant's sentence and ordered that he be resentenced by a different judge. *People v Schwander*, unpublished order of the Court of Appeals, entered April 9, 2013 (Docket No. 307921).

On second remand, a different judge reinstated defendant's original sentence of 40 to 70 years' imprisonment. Defendant appealed and this Court again held that the trial court failed to adequately articulate the substantial and compelling reasons that justified the extent of the departure, and again vacated defendant's sentence and remanded for resentencing by a different judge. *People v Schwander*, unpublished opinion of the Court of Appeals, issued July 21, 2015 (Docket No. 320768) (*Schwander II*), p 13. The prosecution sought leave to appeal this decision to our Supreme Court, but before the Court ruled on the prosecution's application, it issued *People v Lockridge*, 498 Mich 358, 364-365, 399; 870 NW2d 502 (2015), in which it held that the sentencing guidelines were advisory only and that sentences that depart from the sentencing guidelines should be reviewed for reasonableness. Our Supreme Court held this Court's judgment in abeyance pending the decision rendered in *People v Steanhouse*, 500 Mich 453; 902 NW2d 327 (2017). Then in *Steanhouse*, our Supreme Court clarified that the reasonableness review requires determining whether the trial court abused its discretion by violating the principle of proportionality announced in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). *Id*. at 459-460. In lieu of granting leave, our Supreme Court remanded this case to this Court for

reconsideration in light of *Lockridge* and *Steanhouse*. *People v Schwander*, 501 Mich 918; 913 NW2d 190 (2017). On remand, this Court again remanded for resentencing for the trial court to explain how the extent of its departure was proportionate. *People v Schwander*, unpublished per curiam opinion of the Court of Appeals, issued May 22, 2018 (Docket No. 320768) (*Schwander III*), p 10.

On remand, a new judge sentenced defendant because the sentencing judge had retired. The sentencing court departed from the sentencing guidelines recommended minimum sentence range and imposed a sentence of 33 to 50 years' imprisonment. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that his counsel denied him effective assistance by not hiring a mitigation expert or an adolescent-brain-development expert and did not conduct an adequate investigation. We disagree.

## A. RELEVANT LAW

Claims of ineffective assistance of counsel present mixed questions of fact and law—factual findings are reviewed for clear error, while legal conclusions are reviewed de novo. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). Although defendant filed a motion for a *Ginther*[1] hearing, this Court denied that motion,[2] so our review is limited to mistakes apparent in the lower court record. See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). "To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability exists that the outcome of the proceeding would have been different but for trial counsel's errors." *Head*, 323 Mich App at 539 (quotation marks and citation omitted; alteration removed). "[A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). "[E]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016).

## B. FAILURE TO HIRE MITIGATION EXPERT

Defendant argues that his counsel provided ineffective assistance by failing to hire a mitigation expert. Michigan law, however, does not require defense counsel to hire a mitigation expert, and defendant offers no authority that competent representation at sentencing requires that such action be taken. The record indicates that defendant's counsel effectively advocated for defendant's interests by preparing a detailed sentencing memorandum which included several attachments pertaining to potential mitigating factors. These submissions evidenced a thorough and thoughtful investigation by counsel. We additionally note that defendant has not established

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] *People v Schwander*, unpublished order of the Court of Appeals, entered February 17, 2022 (Docket No. 354073).

the requisite prejudice because the mitigation expert he hired for this appeal, Dr. Kathleen Schaefer, submitted her report to the lower court in connection with a postjudgment motion to set aside his sentence, and the court considered it but concluded that the report would not have impacted its sentence.

## C. FAILURE TO HIRE AN ADOLESCENT BRAIN DEVELOPMENT EXPERT

Defendant next argues that his counsel provided ineffective assistance by failing to hire an expert in adolescent brain development. Michigan law, however, does not require defense counsel to hire such an expert, and defendant has otherwise provided this Court no authority suggesting that his counsel had a duty to present the court with information or arguments pertaining to adolescent brain development. Further, defendant has failed to make any offer of proof about the research that could have been presented, such as who could have testified, about what the witness would have testified, and how such testimony would have helped defendant. We cannot conclude that the absence of an expert on brain development in this case constituted an unprofessional error. Defendant, therefore, has failed to establish the factual predicate of his ineffective assistance claim. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). We also note that defendant failed to establish prejudice for this claim as well because, when denying defendant's motion to set aside his sentence, the lower court stated that testimony about adolescent brain development would not have impacted the sentence.

## D. FAILURE TO INVESTIGATE

Defendant also argues that his counsel provided ineffective assistance by not performing an adequate investigation and otherwise failed to adequately prepare defendant for resentencing.[3] "Counsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012) (quotation marks and citation omitted). Despite defendant's assertions to the contrary, the record reflects that defendant's counsel performed a thorough investigation in advance of defendant's resentencing. Counsel's sentencing memorandum contained arguments about a wide array of topics including defendant's family, his lack of a prior criminal record, his remorse, and his growth during incarceration. The most compelling proof of the lengths to which counsel went to investigate on defendant's behalf are the attachments to the memorandum; counsel included a relapse prevention plan, records from the prison, and 12 letters of support from family, friends, fellow inmates, and religious leaders.

In support of his argument that his counsel failed to adequately prepare him for resentencing, defendant points to his statement at the resentencing hearing, arguing that it evidences counsel's failure. At his resentencing, defendant stated:

---

[3] This argument tends to become blended with defendant's other arguments as he often asserts that the deficiencies in counsel's investigation would have been avoided had he hired a mitigation specialist.

You know who I am.

I'm sorry, your honor. I'm sorry, I—I can't—I'm just a coward, a menace to society. I'm—I can't counter anything the prosecutor said. I—I don't—I'm just sorry. I'm sorry. I—I—I hate that—I just hate that everybody hates me. Like it—there's just so much that I can't even put into words. Like—like I can't even—I don't even know where to start.

Like, the picture that was just painted of who I am by the State—even if I wanted to challenge and counter all those things, I'm not a word expert and she said everything. I'm just sorry. I'm sorry. I'm sorry this—this place—I'm sorry to this town, this Court. I'm sorry to the Lewis family. I—I—you know, I've hurt enough people. I think I should just not say anything.

Defendant's statement to the court does not establish that his counsel's performance fell below an objective standard of reasonableness. Further, defendant has not made an offer of proof pertaining to what counsel did to prepare him for sentencing, nor has defendant articulated what his counsel should have done. Accordingly, defendant has failed to establish the factual predicate of his claim that counsel failed to adequately prepare him for his resentencing. See *Hoag*, 460 Mich at 6. Moreover, as with defendant's other arguments, defendant cannot establish that counsel's alleged inadequate performance prejudiced him for resentencing. In arguing to the contrary, defendant cites his statement of remorse found in Dr. Schaefer's mitigation report and argues that presenting something akin to this at the resentencing could have affected the outcome of the proceedings. Yet, when the lower court decided the motion to set aside defendant's sentence, it found defendant's claim of sincere remorse in the mitigation report "self-serving," and lacking credibility. Defendant has failed to establish that his counsel provided ineffective assistance.

### III. REASONABLENESS OF DEPARTURE SENTENCE

Defendant argues that the trial court erred by failing to articulate its reasoning for the extent of its departure from the sentencing guidelines. We disagree.

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *Lockridge*, 498 Mich at 392. "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *Steanhouse*, 500 Mich at 471. An abuse of discretion occurs when the court chooses an outcome falling outside the range of principled outcomes. *People v Skinner*, 502 Mich 89, 133; 917 NW2d 292 (2018). The key test under the principle of proportionality is whether the sentence is proportionate to the seriousness of the offense and the background of the offender. *Steanhouse*, 500 Mich at 472. While the sentencing guidelines are only advisory, "they remain a highly relevant consideration" that sentencing courts must continue to consult. *Lockridge*, 498 Mich at 391. Sentencing courts may depart from the sentencing ranges recommended by the guidelines "when, in their judgment, the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime." *People v Walden*, 319 Mich App 344, 352; 901 NW2d 142 (2017) (quotation marks and citation omitted).

Relevant factors to consider when determining the proportionality of a departure from the sentencing guidelines minimum sentence range "include (1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, and (3) factors considered by the guidelines but given inadequate weight." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (citations omitted). Other relevant factors "include the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation." *Id*. at 525 n 9 (quotation marks and citations omitted). When sentencing a defendant, a trial court must sufficiently justify the sentence imposed in order to facilitate appellate review. *People v Smith*, 482 Mich 292, 311; 754 NW2d 284 (2008). This includes not only an explanation of the reasons for imposing the departure sentence, but an "explanation for the *extent* of the departure independent of the reasons given to impose a departure sentence." *Id*. at 305-306.

In this case, the record reflects that on the recent remand for resentencing, the court considered defendant's guidelines range of 13.5 years to 22.5 years but based upon its thorough analysis of the trial record, defendant's previous sentencings, and this Court's previous decisions of defendant's appeals, it determined that defendant should serve a minimum of 33 years imprisonment, an upward departure of 10½ years. The sentencing court carefully explained on the record its reasoning for that decision. It acknowledged that the principle of proportionality must guide its decision and the record indicates that the court gave due consideration to the seriousness of the circumstances of the offense and defendant's background. The court recognized that defendant was 17 years old when he committed the offense for which a jury convicted him. The record indicates that the sentencing court gave careful consideration of the statutory directive in MCL 769.25 respecting sentencing of a juvenile offender convicted of first-degree murder to a term of years and that by statute "the minimum term shall be not less than 25 years or more than 40 years" with a maximum of 60 years. The court reflected on the fact that in this case the jury convicted defendant of second-degree murder and expressed on the record that it recognized that it had to be mindful of that in sentencing defendant.

The record indicates that, to determine a proportional sentence in this case, the court acknowledged that it must carefully analyze the requisite factors. The court did so on the record in great detail. The resentencing record reflects that in this case the court analyzed the offense and articulated on the record the facts established at trial that defendant stabbed the victim 10 times and inflicted the wound that punctured the victim's lung and ultimately caused her death. The court noted that the pathologist who examined the victim's body concluded that she lived from half an hour to one hour before dying during which, had she been provided medical assistance, she likely would have survived. The court observed that the evidence established that defendant neither provided the victim aid nor summoned aid for her. The court concluded that the evidence established that defendant acted with depraved indifference to human life. The sentencing court did not err in this regard and it could appropriately consider such evidence as part of its sentencing analysis.

The sentencing court next considered whether defendant expressed remorse. The court reflected on the evidence in the record and articulated on the record the grounds for its conclusion that defendant lacked remorse because he never accepted the pathology report which established that he stabbed the victim 10 times and let her die without seeking medical assistance for her. The court also analyzed whether defendant's recent expression of remorse was sincere but found that

his continued failure to accept responsibility for the multiple stab wounds contradicted his feigned remorse. The record indicates that the court gave defendant ample opportunity on the record to show sincere remorse, but at his resentencing he vaguely expressed sorrow to the court and the victim's family. The sentencing court had the ability to assess defendant's sincerity in its face-to-face encounter with defendant at the resentencing hearing. Nothing in the record before us establishes that the court erred in this regard.

The sentencing court also explained on the record the evidence that established that defendant had been taken in by the Lewis family who provided him care when he left his family home. The record supports the court's conclusion that defendant breached the family's trust by stealing their property and killing the victim. The record supports the court's conclusion and it could appropriately consider such evidence as part of its sentencing analysis.

The record also indicates that the court considered the callous manner in which defendant treated the victim's body after he killed her. The court explained that the evidence established that he stripped her body, burned her clothes, buried the body, unburied it, stopped for breakfast and took a nap at some point in this process, moved the body to another location where he reburied it and dumped garbage on the grave to hide it. The sentencing court did not err in this regard and it could appropriately consider such evidence as part of its sentencing analysis.

The court considered defendant's disinterment and movement of the victim's body which constituted a violation of MCL 750.160, a felony punishable by imprisonment for up to 10 years. The court recognized that defendant had not been charged or convicted of that crime but properly understood that it could consider uncharged conduct for sentencing defendant. Sentencing courts "retain discretion to consider uncharged conduct at sentencing," so this was an appropriate ground for a departure. *People v Beesley*, 337 Mich App 50, 62; 972 NW2d 294 (2021). The sentencing court, therefore, could appropriately consider such as part of its sentencing analysis.

The record indicates that the sentencing court also considered defendant's misconducts in prison, some of which caused the court to question whether defendant could live in society. The court reflected upon the fact that defendant stole property from the Lewis family and stole the victim's camera which he gave to his girlfriend. The court could consider these facts and factor them into its sentencing decision.

The sentencing court also properly considered defendant's actions to obstruct the investigation. Evidence established that defendant lied to the Lewis family members directly regarding the victim's absence and posted lies on Facebook. Further, evidence established that defendant attempted to procure false alibis from persons he knew to obstruct law enforcement investigation and evade criminal liability for his murder of the victim. Further in this regard, defendant's burial and reburial of the victim's body, indicated his efforts to obstruct the investigation into the victim's absence by law enforcement and the community that joined the effort to find her. The court explained that the sentencing guidelines did not adequately account for the uncharged conduct or defendant's obstruction conduct. The court considered defendant's efforts to subvert the investigation of the victim's murder. Offense Variable (OV) 19 accounts for "interference with the administration of justice," and provides that 10 points should be assessed if the offender "interfered with or attempted to interfere with the administration of justice . . . ." MCL 777.49(c). The court opined that defendant's OV 19 score did not adequately account for

the extent to which defendant tried to interfere with the investigation in this case, including defendant's making social media posts and communicating with the Lewis family "to send investigators off the scent" and "to shine the light of suspicion somewhere else," as well as his asking multiple people to lie for him as an alibi. We agree with the trial court that the great lengths that defendant went to interfere with the investigation in this case supported a conclusion that OV 19 did not adequately account for the extent of defendant's efforts to subvert the investigation, and was therefore a valid reason for imposing a departure sentence. See *Dixon-Bey*, 321 Mich App at 525 (explaining that a valid reason for imposing a departure sentence is if a factor is considered by the guidelines but given inadequate weight).

The court also appropriately considered whether evidence demonstrated that defendant had the potential for rehabilitation. The court concluded that the evidence called into question defendant's potential for rehabilitation including his lack of taking responsibility for his actions, his lack of sincere remorse, and his misconducts in prison. Prison misconduct is a legitimate reason for a departure sentence. *Dixon-Bey*, 321 Mich App at 525 n 9.

After articulating this thorough analysis on the record, the sentencing court weighed the factors and explained that the totality of the evidence demonstrating the seriousness of the offense and defendant's background, and articulated why a minimum sentence within the guidelines range would not suffice in this case. The court articulated numerous valid reasons for departing from the sentencing guidelines, and sufficiently justified imposing a departure sentence. The record reflects that the court provided its reasons for the sentence imposed, by giving an "explanation for the *extent* of the departure independent of the reasons given to impose a departure sentence." *Smith*, 482 Mich at 305-306. After articulating all of the reasons for an upward departure it explained:

> As a first-degree murder [for a juvenile defendant] could not have a sentence longer than 60 years, a 50-year maximum, to my mind, is appropriate and proportionate for a second-degree murder as here. So the sentence of this Court is 50 percent in excess of the 22-year maximum currently imposed—or currently allowed under the guidelines. That is, therefore, 33 years to—pardon me, to 50 years. That is the sentence of the Court with regard to this matter, and I hope that this brings closure to this case.

We conclude that the sentencing court appropriately described its rationale for the *extent* of the departure in conjunction with its reasons given to impose a departure sentence. The trial court explained the extent of the departure as suggested by *Smith*, 482 Mich at 310, by examining what a similar individual committing a similar act (a juvenile convicted of first-degree murder, a more egregious statutory crime) would have received as a maximum sentence, and then reducing defendant's maximum below that in light of the lesser offense defendant was convicted of, though his still having committed a horrific murder. The sentencing court, therefore, adequately provided justification of the substantial departure in this case. Contrary to defendant's argument, it is not

unclear why the court imposed the upward departure in this case.[4]  Therefore, we hold that the sentencing court imposed a reasonable sentence and affirm defendant's sentence.

## IV.  CONCLUSION

We find no justification for reversal of defendant's resentencing.  Therefore, we affirm the lower court's resentencing decision.

/s/ Christopher M. Murray
/s/ James Robert Redford

---

[4] In a supplemental brief, defendant asserts that, if our Supreme Court's recent opinion in *Stovall*, ___ Mich ___ (2022) (Docket No. 162425), had been available when he was preparing his brief, he "would have argued that his sentence violated Article 1, § 16 of Michigan's constitution, prohibiting cruel and unusual punishment." *Stovall* is inapplicable to this case because it applies only to juvenile defendants convicted of second-degree murder who were sentenced to a parolable life sentence, *id*. at ___; slip op at 15, and defendant was not given a life sentence.  Thus, any argument by defendant that his sentence violated the Michigan Constitution strictly on the basis of *Stovall* would fail.