*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MCKINLEY DALE KERR-FLETCHER,

        Defendant-Appellant.

UNPUBLISHED
December 15, 2022

No. 354304
Calhoun Circuit Court
LC No. 2019-001128-FC

Before: GLEICHER, C.J., and MARKEY and RICK, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial conviction of armed robbery, MCL 750.529. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to 337 months to 50 years' imprisonment. We affirm.

## I. FACTS

This case arises out of an armed robbery. The victim testified that she was robbed by a man in a mall parking lot while she was accompanied by a friend. The victim's friend testified that the man stabbed the victim when she refused to let go of her purse. The robber fled with the victim's purse in a dark green Toyota Camry. The victim and her friend described the assailant as a tall, large man whose sheer size was striking. Defendant is 6'5" and weighs nearly 300 pounds. The armed robber was also described as wearing thick glasses, and defendant told the police during an interview that he wears glasses and is almost legally blind without them. The victim and her friend viewed several photographs supplied by the police a few days after the robbery, but neither could identify a suspect.[1]

---

[1] There is no indication in the record that defendant's photograph was included in the photos that the victim and her friend reviewed at that time.

-1-

About a year after the offense was committed, defendant's ex-girlfriend informed the police that defendant had borrowed her green Toyota Camry on the day of the robbery.[2] The former girlfriend testified that defendant called her on the morning of the robbery and told her not to worry about her electric bill, that defendant called her a second time that day in a panicked voice and said that he was driving to her apartment, and that defendant subsequently arrived and parked the Camry inside a garage behind the apartment building. Defendant's ex-girlfriend further testified that defendant then entered her apartment and admitted that he had committed a stabbing and robbery in the mall parking lot, providing several details of the crime. The ex-girlfriend's daughter also testified that defendant, in her presence, admitted his involvement in the robbery.

After the police received the new information from defendant's former girlfriend, a photo lineup was arranged, and the victim and her friend independently identified defendant as the perpetrator. At a *Ginther*[3] hearing, defendant's trial counsel divulged that plans of an in-person physical lineup were scratched when the police could not find anyone comparable in size to defendant to stand in. We have examined the photo lineup or array presented to the victim and her friend, and we find it to have been fair. All of the paraded individuals—eight in total including defendant—are very similar in appearance. The victim did indicate that she saw defendant's photograph in a newspaper account of the crime some weeks before the photo lineup, but she adamantly asserted that it had no bearing on her selecting defendant in the array. Her friend had not seen the newspaper article and picture. During the trial, the victim and her friend both identified defendant as the perpetrator of the armed robbery.

Defendant's primary defense was that the victim and her friend had misidentified defendant. Defense counsel extensively cross-examined both women about their identifications in an effort to undermine their credibility. Defendant's attorney also extensively cross-examined defendant's ex-girlfriend and her daughter about the motivation behind their accusations.

Defendant filed a postjudgment motion for new trial, alleging ineffective assistance of counsel. After hearing oral arguments, the trial court granted defendant's request for a *Ginther* hearing. During the hearing, defense counsel testified that he chose not to move to suppress the in-court and out-of-court identifications because he believed that doing so would have been futile. Additionally, counsel indicated that he was aware of the science concerning the unreliability of eyewitness identification, but he believed that he could effectively challenge the witnesses' identifications through cross-examination without the need to also call an expert in eyewitness identification. Counsel further stated that his research uncovered *People v Blevins*, 314 Mich App 339; 886 NW2d 456 (2016), and that the case dictated many of his decisions.

The trial court found that defense counsel was not ineffective, and it denied defendant's motion for new trial. The trial court ruled that counsel's decisions amounted to reasonable trial

---

[2] Defendant testified that neither he nor his ex-girlfriend owned a Toyota Camry on the date of the robbery. But a detective testified that he ran an inquiry through the Secretary of State and determined that defendant's former girlfriend did indeed own a Toyota Camry at the time of the offense.

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

strategy. The court emphasized that "[p]eople can disagree with trial tactics, [but] it doesn't mean they're wrong." The trial court noted that even if defense counsel challenged the identifications or called an expert in eyewitness identification, "[i]t would not have made a difference in the outcome of this case."

## II. ANALYSIS

On appeal, defendant argues that trial counsel was ineffective for (1) failing to challenge the victim's pretrial and in-court identifications, (2) failing to call an expert in eyewitness identification, and (3) failing to request a jury instruction regarding eyewitness identification.

### A. PRINCIPLES REGARDING INEFFECTIVE ASSISTANCE OF COUNSEL

Whether counsel was ineffective presents a mixed question of fact and constitutional law, and factual findings are reviewed for clear error, whereas questions of law are reviewed de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). In *People v Carbin,* 463 Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court recited the principles governing a claim of ineffective assistance of counsel:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy [a] two-part test . . . . First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. Second, the defendant must show that the deficient performance prejudiced the defense. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. [Quotation marks and citations omitted.]

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

### B. FAILURE TO CHALLENGE IDENTIFICATIONS – DISCUSSION AND RESOLUTION

Defendant argues that his trial counsel was ineffective for failing to challenge the victim's pretrial and in-court identifications.[4] When a defendant moves to suppress an out-of-court identification, he or she "must show that the pretrial identification procedure was so suggestive in

---

[4] We note that defendant does not raise an argument regarding the identifications made by the victim's friend.

light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *People v Posey*, 334 Mich 338, 347; 964 NW2d 862 (2020) (quotation marks and citation omitted).

We conclude that defendant has failed to demonstrate that the photo lineup was impermissibly suggestive. As noted earlier, the victim was shown photographs of eight individuals who looked very similar to defendant. Defendant's physical size was not observable in the photographs. Defense counsel assisted the police in selecting the photographs so as to make the photo lineup as fair as possible. Again, while the victim testified that she had seen defendant's photograph in the newspaper weeks before identifying him in the lineup, she also asserted that she identified defendant because he was her assailant and not because she had previously seen his picture. The victim also testified that the police told her before she identified defendant in the photo array that they thought they had caught her attacker. But "the fact that a victim is told the attacker is in the lineup does not alone render a lineup unduly suggestive." *People v Sawyer*, 222 Mich App 1, 3; 564 NW2d 62 (1997). Even assuming that the victim believed that her assailant was in fact one of the individuals in the photo lineup, she still selected defendant from eight total photographs depicting extremely similar-looking males. At the *Ginther* hearing, defense counsel testified that he had considered moving to suppress the identification but believed that such a motion would have been futile. We conclude that trial counsel was not ineffective for failing to seek suppression of the victim's out-of-court identification. A motion, had it been filed, would have been meritless and futile; it was a fair and reasonable photo lineup. See *Posey*, 334 Mich App at 353 (counsel is not ineffective for failing to raise meritless and futile objections).[5]

## C. FAILURE TO CALL EXPERT WITNESS – DISCUSSION AND RESOLUTION

Defendant argues that defense counsel was ineffective because he failed to call an expert in eyewitness identification at defendant's trial. Counsel's decision to retain expert witnesses is generally a matter of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Traver (On Remand)*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019) (quotation marks and citation omitted). But "a court cannot insulate the review of counsel's performance by calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "Initially, a court must determine whether the strategic choices were made after less than complete investigation, and any choice is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* (quotation marks, citation, and brackets omitted). A decision regarding whether

---

[5] To the extent that defendant is arguing that the trial court plainly erred by allowing the admission of the victim's pretrial identification, we hold that the trial court did not plainly err by admitting the evidence given that the lineup was not impermissibly suggestive. See *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Additionally, defendant contends that because the pretrial lineup was impermissibly suggestive, it tainted the victim's in-court identification, requiring exclusion of the in-court identification. Consequently, according to defendant, defense counsel was ineffective for failing to challenge the victim's in-court identification. In light of our ruling finding no ineffective assistance or error relative to the victim's pretrial identification, we hold that reversal in connection with the victim's in-court identification is unwarranted.

to call or question an expert witness is presumed to be a matter of trial strategy with respect to which we will not substitute our judgment so long as reasonable professional judgment supported counsel's choice. *Posey*, 334 Mich at 352-353

Defense counsel believed that identification was a "common sense issue with regards to believability" that he could address through cross-examination. Counsel made the strategic choice to solely cross-examine the witnesses about their identifications rather than to also call an expert witness, and he did so vigorously. While defendant posits that presenting an expert on eyewitness identification would have been helpful in his defense, the fact that an attorney's particular trial strategy failed does not mean that his or her performance was deficient. See *Blevins*, 314 Mich App at 351. Defendant argues, however, that defense counsel's refusal to call an expert without first consulting one amounted to an unreasonable investigation. Defense counsel stated that he conducted research, and his review of *Blevins*, 314 Mich App 339, dictated his decision to cross-examine the witnesses. In *Blevins*, this Court, addressing an argument that an expert on the faultiness of eyewitness identification should have been hired, ruled that "counsel's decision to rely on cross-examination to impeach the witnesses who identified defendant does not fall below an objective standard of reasonableness." *Id.* at 351. When asked whether he ever considered consulting an expert, defense counsel stated that he did, but he believed that witness credibility was ultimately a question of fact for the jury. Counsel opined that it would have been easy to poke holes in an expert's testimony about statistical data on the accuracy or inaccuracy of eyewitness identification. Defendant argues that defense counsel's cross-examination was "largely ineffective."

It does appear from his testimony that counsel simply does not believe in using experts on the subject of the unreliability of eyewitness testimony; he did not truly investigate employing an expert, and there was no consultation with an expert. Assuming deficient performance for making a strategic choice after less than complete investigation, we cannot conclude that the requisite prejudice has been established. There were two separate and independent identifications of defendant as the assailant, outside of court and in court, and there were consistencies between the descriptions of a large towering man with thick glasses and defendant's actual characteristics. Moreover, the testimony of defendant's ex-girlfriend and her daughter essentially cemented the case that it was indeed defendant who committed the armed robbery. We also note that defendant was caught in an apparent lie about his ex-girlfriend owning a Toyota Camry. Counsel's ineffectiveness, if any, does not give rise to "a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Carbin*. 463 Mich at 600. Reversal is unwarranted.

D. FAILURE TO REQUEST JURY INSTRUCTION – DISCUSSION AND RESOLUTION

Defendant argues that trial counsel was ineffective for failing to request a jury instruction on the issue of identification as provided for in M Crim JI 7.8. We first note that the jury was instructed with respect to judging the credibility of a witness's testimony. See M Crim JI 3.6. M Crim JI 7.8 provides:

> (1) One of the issues in this case is the identification of the defendant as the person who committed the crime. The prosecutor must prove beyond a

reasonable doubt that the crime was committed and that the defendant was the person who committed it.

(2) In deciding how dependable an identification is, think about such things as how good a chance the witness had to see the offender at the time, how long the witness was watching, whether the witness had seen or known the offender before, how far away the witness was, whether the area was well-lighted, and the witness's state of mind at that time.

(3) Also, think about the circumstances at the time of the identification, such as how much time had passed since the crime, how sure the witness was about the identification, and the witness's state of mind during the identification.

(4) You may also consider any times that the witness failed to identify the defendant, or made an identification or gave a description that did not agree with (his / her) identification of the defendant during trial.

(5) You should examine the witness's identification testimony carefully. You may consider whether other evidence supports the identification, because then it may be more reliable. However, you may use the identification testimony alone to convict the defendant, as long as you believe the testimony and you find that it proves beyond a reasonable doubt that the defendant was the person who committed the crime.

On review and consideration of the evidence in this case, we note it is certainly arguable that instructing the jury on M Crim JI 7.8 would have been more harmful than beneficial to defendant's case. We therefore cannot conclude that counsel's performance in failing to request an instruction under M Crim JI 7.8 fell below an objective standard of reasonableness. *Toma*, 462 Mich at 302. Moreover, even assuming deficient performance, we find that defendant has not demonstrated the existence of a reasonable probability that, but for counsel's presumed error in not requesting the instruction, the result of the trial would have been different. *Carbin,* 463 Mich at 600. The evidence against defendant was quite strong, and reading M Crim JI 7.8 to the jury would have made no difference in the outcome.

## III. CONCLUSION

In sum, because there is no basis to reverse the conviction on the claimed instances of ineffective assistance of counsel, we hold that the trial court did not abuse its discretion by denying defendant's motion for new trial. See *People v Powell*, 303 Mich App 271, 276-277; 842 NW2d 538 (2013).

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Jane E. Markey
/s/ Michelle M. Rick

-6-