*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAVID PAUL YOUSIF,

        Defendant-Appellant.

UNPUBLISHED
October 12, 2023

No. 361162
Macomb Circuit Court
LC No. 2021-002359-FH

Before: MURRAY, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction for one count of fourth-degree criminal sexual conduct (CSC-IV) accomplished with force or coercion, MCL 750.520e(1)(b). The trial court sentenced defendant to 270 days in jail and five years' probation. On appeal, defendant contends that his trial counsels[1] rendered ineffective assistance in numerous ways that cumulatively, if not individually, denied him a fair trial. We affirm.

## I. BACKGROUND

Defendant's conviction resulted from his interaction with the complainant at a sports bar in July 2020. The complainant's sister and nephew work at the bar, and the complainant is familiar with "the manager and the owners." On the evening in question, the complainant and a friend, Jamie Hall, went to the bar together, sat at a high-top table, and ordered food and drinks. The complainant testified that when she was on the phone at the bar, defendant, who was seated nearby, grabbed her chin and turned her face toward him. Defendant told the complainant, "[Y]ou're too pretty to be upset," and the complainant brushed him away.

Once the complainant finished talking on the phone and Hall returned to the table, defendant came over to strike up a conversation. The complainant and Hall testified that defendant was arrogant, vulgar, and at one point removed the complainant's baseball cap and took it back to his table. A waitress retrieved the hat from defendant. They also testified that defendant stood by

---

[1] Defendant was jointly represented by two separate attorneys as relevant to his ineffective assistance claims.

the complainant and Hall's table as they prepared to leave the bar. He ignored the complainant's protests and pulled his hand around her back to grab her face. He then pulled her into a forced hug and squeezed her breast. The complainant and Hall reported the incident to police.

Defendant's jury trial took place over three days. Defense counsels did not call any witnesses for the defense. The court agreed to instruct jurors on the lesser offense of simple assault and battery in addition to CSC-IV. During closing arguments, defense counsels argued that even if the prosecution's witnesses, particularly the complainant and Hall, were believed, the testimony did not establish that any of defendant's alleged contact with the complainant was for a sexual purpose. Ultimately, defense counsels argued that there was enough reasonable doubt to find defendant not guilty of any offense. However, counsels acknowledged that "[i]t's a closer call on" whether there was enough evidence for an assault-and-battery conviction. In closing, defense counsels requested a verdict of not guilty.

After less than 20 minutes deliberating, the jury convicted defendant of CSC-IV. Later, defendant, through new counsel, moved for a new trial and/or a *Ginther*[2] hearing, arguing that his trial counsels rendered ineffective assistance because "the Trial record is barren of any reference to a videotape existing which could essentially exonerate defendant . . . ." Defendant also asserted that a manager at the bar, Gwienyai "Brian" Mangenje, verified in a postconviction telephone call that a video of the incident existed and showed no sexual assault. The trial court denied defendant's request for a new trial. The trial court subsequently sentenced defendant as described earlier.

The day after defendant's sentencing, he filed the instant appeal. Concurrently, defendant moved for reconsideration of the trial court's denial of his motion for a new trial and/or a *Ginther* hearing. In support, defendant argued that he was:

> entitled to a new trial based upon the failure to produce exculpatory evidence which was known both before trial as well as confirmed to exist during trial and then thereafter post-conviction via a telephone conversation by and between Defendant and the bar manager. That at the very least, Defendant is entitled to a Ginther Hearing [sic] as to why neither the video nor the individual who viewed the video was proffered at the time of trial.

The trial court ultimately agreed to hold a *Ginther* hearing "to provide [further] information" on the extent of defendant's interaction with the complainant, and to allow defendant's trial counsels to testify regarding their performance. The trial court then held a *Ginther* hearing, during which defendant raised additional ineffective-assistance claims for the first time. Specifically, defendant argued that defense counsels were additionally ineffective for failing to call Joe Youkhanna, defendant's friend who was also at the bar, to testify, and for not allowing defendant to testify. At the hearing, defendant's cocounsels before and during trial, Stephen Rabaut and Peter Torrice, both testified. Two police officers, Youkhanna, defendant, and Mangenje also testified.

---

[2] See *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Following the witnesses' testimony, the trial court concluded that defendant's trial counsels were not ineffective, and that a new trial was unwarranted. Additionally, the court determined that even presentation of the video of the incident and Mangenje's description thereof would not have affected the case's outcome. The trial court, therefore, entered an order denying defendant's request for a new trial.

## II. STANDARD OF REVIEW

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020) (quotation marks and citation omitted). "Findings of fact are reviewed for clear error, while constitutional determinations are reviewed de novo." *Id*. (quotation marks and citation omitted). "A finding is clearly erroneous if this Court is left with a definite and firm conviction that the trial court made a mistake." *Id*. at 227-228 (quotation marks and citation omitted). Further, for multiple claims of ineffective assistance, "[t]his Court reviews a claim of cumulative error to determine whether the combination of alleged errors denied the defendant a fair trial." *People v Allen*, 331 Mich App 587, 611; 953 NW2d 460 (2020), vacated in part on other grounds 507 Mich 856 (2021).

However, defendant raises for the first time on appeal that defense counsels were ineffective by effectively conceding his guilt. Accordingly, this argument of ineffective assistance is unpreserved. "This Court reviews an unpreserved ineffective-assistance-of-counsel claim for errors apparent on the record." *People v Hieu Van Hoang*, 328 Mich App 45, 63; 935 NW2d 396 (2019).

## III. ANALYSIS

Criminal defendants are entitled to the effective assistance of counsel under both the Michigan and United States Constitutions. Const 1963, art 1, § 20; US Const, Am VI, *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "In order to establish the right to a new trial premised on ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Abcumby-Blair*, 335 Mich App at 228. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citations omitted). This two-part test is derived from the standard set forth by the United States Supreme Court in *Strickland*. See *People v Carbin*, 463 Mich 590, 600-601; 623 NW2d 884 (2001).

"Generally, attorneys are given broad latitude to determine trial strategy, and there is a strong presumption that counsel's performance was born from sound strategy." *People v Yeager*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket No. 164055); slip op at 6; see also *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021) ("Trial counsel's performance is presumed to be effective, and [a] defendant has the heavy burden of proving otherwise."). "However, counsel's strategic decisions must be objectively reasonable." *Yeager*, ___ Mich at ___; slip op at 6.

### A. CONCESSION OF GUILT

Defendant argues that defense counsels were ineffective for effectively conceding defendant's guilt. According to defendant, his case, given defense counsels' concession, is similar to *McCoy v Louisiana,* 584 US ___; 138 S Ct 1500; 200 L Ed 2d 821 (2018) (holding that a defendant's Sixth Amendment right was violated because defense counsel conceded the defendant's guilt despite the defendant's repeated protests that he was innocent). Defendant argues that, given the definition of "sexual contact" under MCL 750.520a(q), defense counsels' strategy and associated argument in effect conceded, even if inadvertently, defendant's guilt of CSC-IV. This holds true, according to defendant, because the definition includes categories of touching not strictly done for a sexual purpose, including the type of contact to which defense counsels conceded. This misunderstanding of the law, defendant continues, was a serious error requiring automatic reversal because, under *McCoy*, the violation of a defendant's Sixth Amendment right to pursue his defense through counsel's concession of guilt is structural error.

A person is guilty of CSC-IV if he or she "engages in sexual contact with another person and . . . [f]orce or coercion is used to accomplish the sexual contact." MCL 750.520e(1)(b). Under MCL 750.520a(q):

> "Sexual contact" includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for:
>
> (*i*) Revenge.
>
> (*ii*) To inflict humiliation.
>
> (*iii*) Out of anger.

A complete concession of guilt amounts to ineffective assistance of counsel. *People v Krysztopaniec*, 170 Mich App 588, 596; 429 NW2d 828 (1988).[3] However, a lawyer does not render ineffective assistance by conceding certain points at trial, including conceding guilt of a lesser offense. See *People v Emerson (After Remand)*, 203 Mich App 345, 348-349; 512 NW2d 3 (1994).

As an initial matter, defendant's reliance on *McCoy*, 584 US ___; 138 S Ct 1500, is misplaced. Defense counsel's conduct in *McCoy* constituted the following:

> At the beginning of his opening statement at the guilt phase of the trial, [defense counsel] told the jury there was "no way reasonably possible" that they could hear the prosecution's evidence and reach "any other conclusion than [that the defendant] was the cause of these individuals' death." [The defendant] protested; out of earshot of the jury, [the defendant] told the court that [defense

---

[3] Although this Court is not required to follow cases decided before November 1, 1990, see MCR 7.215(J)(1), a published case decided by this Court "has precedential effect under the rule of stare decisis," MCR 7.215(C)(2).

counsel] was "selling [him] out" by maintaining that [the defendant] "murdered [his] family." The trial court reiterated that [defense counsel] was "representing" [the defendant] and told [the defendant] that the court would not permit "any other outbursts." Continuing his opening statement, [defense counsel] told the jury the evidence is "unambiguous," "my client committed three murders." [The defendant] testified in his own defense, maintaining his innocence and pressing an alibi difficult to fathom. In his closing argument, [defense counsel] reiterated that [the defendant] was the killer. On that issue, [defense counsel] told the jury that he "took [the] burden off of [the prosecutor]." [*Id.* at 1506-1507 (citations omitted; sixth, eighth, seventeenth, and eighteenth alterations in original).]

In holding that these facts amounted to a violation of the defendant's Sixth Amendment right to control his defense,[4] the *McCoy* Court stated, "When a client expressly asserts that the objective of *his* defence [sic] is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt." *Id.* at 1505, 1509 (quotation marks and citation omitted). The Court also distinguished the facts of *McCoy* from an earlier case where the defendant "was generally unresponsive during discussions of trial strategy," "never verbally approved or protested counsel's proposed approach," and "complained about the admission of his guilt only after trial." *Id.* at 1509 (quotation marks and citations omitted). In contrast, the defendant in *McCoy* "opposed [defense counsel]'s assertion of his guilt at every opportunity, before and during trial, both in conference with his lawyer and in open court." *Id.*

Here, unlike in *McCoy*, defense counsels never conceded guilt in any way. Defense counsels explicitly argued that there was enough reasonable doubt to find defendant not guilty of CSC-IV, or any offense for that matter, and requested such a verdict. Indeed, defense counsels noted for the jury that the complainant and Hall were both drinking, possibly impacting their reactions in the moment and memories of events, and counsels generally raised alleged inconsistencies in the prosecution's evidence and the complainant's and Hall's stories. Defense counsels only conceded that *if* the prosecution's witnesses were believed, the testimony did not establish that any of defendant's *alleged* contact with the complainant was for a sexual purpose and he, at most, committed assault and battery. Indeed, defense counsels never actually conceded that a breast-grab, or any specific touching, occurred. Instead, counsels merely emphasized that Hall *described* the touching as forceful, not sexual. And, it is not ineffective assistance to concede to specific points or to the guilt of a lesser offense. Further, unlike the defendant in *McCoy*, defendant here only objected to defense counsels' strategy after he was found guilty at trial. For these reasons, we believe defense counsels did not render ineffective assistance by effectively conceding guilt.

In any event, defendant was not prejudiced from counsels' error. Critically, defendant fails to substantively address the prejudice prong under this claim of error. Instead, he merely argues that automatic reversal is required because counsels' error, under *McCoy*, is structural. But the facts here, as discussed, are dissimilar to defense counsel's complete concession of guilt over the defendant's repeated objections that occurred in *McCoy*. Further, structural error is generally insufficient by itself to establish prejudice for ineffective assistance. See *People v Vaughn*, 491

---

[4] Notably, the *McCoy* Court did not apply its ineffective-assistance-of-counsel jurisprudence to the case "[b]ecause a client's autonomy, not counsel's competence, [wa]s in issue." *Id.* at 1510-1511.

-5-

Mich 642, 671; 821 NW2d 288 (2012) ("[O]nly a narrow class of situations [exist] in which prejudice is presumed for ineffective assistance purposes: 'when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding' or 'when counsel is burdened by an actual conflict of interest.' Otherwise, 'actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice.' ") (citations omitted). None of these limited situations apply here.

Additionally, the jury's verdict was seemingly unaffected by defense counsels' potential misunderstanding of the law. To reiterate, defense counsels never really conceded anything, and merely emphasized that Hall described the touching as forceful, not sexual. But in convicting defendant of CSC-IV and not assault and battery, jurors implicitly determined that defendant did touch the complainant, and that the touching was for a sexual purpose. Specifically, the court's jury instructions, which defendant neither contested below nor contests on appeal, described the elements necessary to convict defendant under CSC-IV as:

> First, the Defendant intentionally touched [the complainant's] breast or the clothing covering that area. Second, that the touching was done for sexual purposes or could reasonably be construed as having been done for sexual purposes. Third, the Defendant used force or coercion to commit the sexual act.

Accordingly, the jury was never instructed on, and thus could not be confused by, the additional categories of sexual conduct not requiring a sexual purpose under MCL 750.520a(q)(*i*), (*ii*), and (*iii*). Jurors determined beyond a reasonable doubt that defendant satisfied the elements of CSC-IV as stated by the court, including that his conduct was, or could reasonably be construed as, for a sexual purpose. For the foregoing reasons, defendant was not prejudiced on this subissue, and it, therefore, does not require reversal.

## B. FAILURE TO CALL WITNESSES

Defendant argues that defense counsels were ineffective for failing to call Youkhanna and Mangenje as witnesses.

As an initial matter, much of defendant's focus on this, and the next, subissue involves counsels' alleged errors depriving him of various substantial defenses. However, our Supreme Court has stated that a defendant is "not required to show, in order to obtain relief for ineffective assistance of counsel, that trial counsel's failure to call witnesses deprived him [or her] of a substantial defense." *People v Jurewicz*, 506 Mich 914, 915 (2020). "Rather, a claim of ineffective assistance of counsel premised on the failure to call witnesses is analyzed under the same standard as all other claims of ineffective assistance of counsel, i.e., a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Id*. (quotation marks and citation omitted). We analyze defendant's claims accordingly.

Here, Torrice and Rabaut both testified that they discussed the decision not to call Youkhanna with defendant. And we agree with the trial court that Youkhanna's testimony was not particularly helpful to defendant's case. Youkhanna was a longtime friend of defendant and thus a potentially biased witness. And while Youkhanna testified at the *Ginther* hearing that he saw the entire incident and observed no inappropriate touching by defendant, Youkhanna also acknowledged that he was seated some distance away from the others and was unable to hear

everything between defendant and the complainant. His testimony was also inconsistent at times regarding the extent of what he saw and heard at the bar. Given these facts, it was not objectively unreasonable to forego calling such a witness.

The same is true regarding Mangenje. Because the video apparently viewed by Mangenje was unavailable by the time Torrice and Rabaut started on defendant's case, they could not be ineffective for failing to secure it. And the trial court correctly recognized that Mangenje's testimony describing the video was vague and unhelpful to defendant's case, particularly given that Mangenje only saw a portion of the video. Concerning defendant's focus on Mangenje testifying only that surveillance video once existed, Torrice and Rabaut both maintained that they were never informed that Mangenje saw any video, despite them having a private investigator speak with Mangenje. While Mangenje testified that he told the investigator about having seen surveillance footage of the incident, the trial court implicitly rejected this assertion in addressing the video and Mangenje's testimony. Given the disputed testimony on this matter, the court's implicit finding was not clearly erroneous. Accordingly, without the benefit of hindsight, it was not objectively unreasonable for defense counsels not to call Mangenje, a witness counsels appropriately investigated but deemed unhelpful to the case.

Further, we conclude that the failure to call Youkhanna or Mangenje did not prejudice defendant. As discussed, defense counsels did argue that defendant never sexually assaulted the complainant. Counsels merely did so by challenging the sufficiency of the prosecution's evidence and the credibility of its witnesses' stories rather than by calling unhelpful and potentially biased witnesses to testify for the defense. Concerning the other lines of argument defendant asserts could have been made had Mangenje testified that surveillance video was at one point available but never secured, we disagree that any of these likely would have affected the case's outcome. First, police were already questioned at trial regarding the lack of surveillance footage and why no video of the incident was ever acquired. Second, defense counsels explicitly highlighted the complainant's family connections at the bar in attempting to discredit various aspects of her testimony. Even had defense counsels called Mangenje at trial and argued that the video was somehow improperly withheld in connection with the complainant's relatives working at the bar, this argument is entirely too speculative to satisfy a finding of prejudice. See *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009) (reasoning that ineffective-assistance arguments cannot be supported by mere speculation). For the foregoing reasons, defense counsels' decisions not to call Youkhanna or Mangenje to testify were objectively reasonable and did not prejudice defendant.

## C. FAILURE TO CALL DEFENDANT

Next, defendant argues that his counsels were ineffective for failing to call him to testify, and for not informing him of his right to do so. In making this argument, defendant admits that the trial court advised him of his right to testify at the end of the first day of trial and gave him an opportunity to discuss this with counsel. But defendant reiterates his *Ginther* hearing testimony that he wanted to testify at trial, and his attorneys neither conferred with him on the matter before resting nor allowed him to express his desire to testify. Defendant contends that, rather than being a matter of trial strategy, this decision deprived defendant of the substantial defense "that he was innocent of the crime he was accused of committing." This is especially true given defense counsels' "conce[ssion] that an inappropriate touching occurred and . . . that it was not sexual."

Here, the trial court emphasized the testimony of defense counsels that they discussed this issue thoroughly with defendant, but were concerned about his credibility. Accordingly, the court seemed to find that defense counsels sufficiently informed defendant regarding his right to testify. Given the disputed testimony on this matter, the court's implicit finding was not clearly erroneous. Moreover, while defendant's lies to police were already established in the trial record, it was not unreasonable to forego presenting defendant's version of events when the prosecution would be able to significantly expand on defendant having lied to police. Indeed, defendant's credibility issues could have been interpreted by the jury as reinforcing the truth of the prosecution's case even more than as occurred without defendant's testimony.

Further, for the same reasons as stated earlier, defendant was not prejudiced by not testifying. While defendant never testified to his version of events, defense counsels still argued against the prosecution's case and asserted that defendant was innocent of CSC-IV. And defendant, apart from conclusively asserting that this alleged error deprived him of the substantial defense (setting aside the inapplicability of this standard) that he was innocent, fails to explain how exactly he was prejudiced by not testifying.

We acknowledge that an attorney, regardless of strategy implications, must abide by a defendant's desire to testify at trial. But defendant never made it apparent that he wanted to testify. Critically, defendant was clearly instructed by the trial court on his right to testify, and was given the opportunity to discuss this with counsel at the end of the second day of trial. At this point, defense counsels told the court that some discussions with defendant on the issue had already occurred, and defendant did not object to this characterization. When trial resumed the next day and defense counsels rested, defendant similarly made no mention of any desire to testify. For the foregoing reasons, we conclude that defense counsels' decision not to call defendant to testify was objectively reasonable and did not prejudice defendant.

Lastly, defendant argues that defense counsels' errors cumulatively, if not individually, undermined the outcome of this case and denied him a fair trial. However, because there was no ineffective assistance and otherwise no prejudicial error, there was no cumulative error by defense counsels that would warrant a new trial.

Affirmed.

/s/ Christopher M. Murray
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle